# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In Re Ex Parte* Application of Eni S.p.A. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No. |

# MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION OF ENI S.P.A. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

LANDIS, RATH & COBB LLP
Daniel B. Rath (No. 3022)
Rebecca L. Butcher (No. 3816)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington DE  19801
(302) 467-4400
rath@lrclaw.com
butcher@lrclaw.com
cree@lrclaw.com


Nicolas Bourtin (*pro hac vice* pending)
Beth D. Newton (*pro hac vice* pending)
Michele C. Materni (*pro hac vice* pending)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000
bourtinn@sullcrom.com
newtonb@sullcrom.com
maternim@sullcrom.com

October 6, 2020                              *Counsel for Applicant Eni S.p.A.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ................................................................................................................4

    A.    The Parties ............................................................................................4

    B.    The OPL 245 Transaction Between Eni, Shell, and the FRN................................5

    C.    The FRN's About-Face Regarding the Validity of the Transaction and Litigation Campaign Against Eni ............................................................6

    D.    Eni's Need for Discovery Into the FRN's Apparent Misconduct.........................8

        1.    The Italian Actions....................................................................... 11

        2.    The International Arbitration ................................................... 12

    E.    The Limited Discovery Sought.........................................................12

LEGAL STANDARD.....................................................................................................13

ARGUMENT ................................................................................................................14

I.    ENI'S APPLICATION SATISFIES THE STATUTORY REQUIREMENTS FOR ISSUANCE OF THE SUBPOENAS UNDER SECTION 1782. ............................14

II.    THE DISCRETIONARY FACTORS UNDER SECTION 1782 WEIGH HEAVILY IN FAVOR OF GRANTING ENI'S APPLICATION FOR LEAVE TO SERVE DISCOVERY.........................................................................16

    A.    The Evidence Eni Seeks is Likely to Be Unobtainable Without This Court's Assistance. ............................................................................16

    B.    The Foreign Tribunals Would Be Receptive to Information Obtained Pursuant to Section 1782. ..................................................................17

    C.    Eni's Application Is Not a Bad-Faith Attempt to Circumvent the Foreign Tribunals' Proof-Gathering Restrictions.............................................18

    D.    Eni's Narrow, Targeted Discovery Requests Are Not Unduly Intrusive or Burdensome. .....................................................................................19

CONCLUSION................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*In re Application of Gilead Pharmasset LLC*,
    2015 WL 1903957 (D. Del. Apr. 14, 2015)....................................................................13, 19

*In re Application of Global Energy Horizons Corp.*,
    647 F. App'x 83 (3d Cir. 2016) .......................................................................................15, 19

*In re Application of Imanagement Services Ltd.*,
    2006 WL 547949 (D.N.J. Mar. 3, 2006).........................................................................15, 17

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998).....................................................................................................16

*In re Biomet Orthopaedics Switzerland GmbH*,
    742 F. App'x 690 (3d Cir. 2018) ...............................................................................3, 13, 16

*In re Chevron Corp.*,
    633 F.3d 153 (3d Cir. 2011)....................................................................................................19

*In re EWE Gasspeicher GmbH*,
    2020 WL 127612 (D. Del. Mar. 17, 2020) ............................................................................16

*In re Ex Parte Petition of Republic of Turkey for an Order Directing Discovery
From Hamit Çiçek Pursuant to 28 U.S.C. § 1782*,
    2020 WL 2539232 (D.N.J. May 18, 2020)...................................................................2, 3, 15

*In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation
Pour le Traitement du Mais*,
    2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) ..........................................................................3

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).......................................................................................................*passim*

*INVISTA North America S.A.R.L.* v. *M & G USA Corp.*,
    2013 WL 1867345 (D. Del. Mar. 28, 2013) ..........................................................................18

*Kulzer* v. *Esschem, Inc.*,
    390 F. App'x 88 (3d Cir. 2010) ..............................................................................................16

*In re Petition of Republic of Turkey for an Order Directing Discovery
From Hamit Çiçek Pursuant to 28 U.S.C. § 1782*,
    2020 WL 4035499 (D.N.J. July 17, 2020).......................................................................14, 18

*In re Matter of Application of Oxus Gold PLC*,
    2006 WL 2927615 (D.N.J. Oct. 11, 2006) .......................................................................3, 15

*Matter of HES (Caribbean) Intenational Holdings, S.R.L.*,
    2020 WL 728892 (D.N.J. Feb. 13, 2020) ......................................................................14, 17

*Matter of Wei for Order Seeking Discovery Under 28 U.S.C. § 1782*,
    2018 WL 5268125 (D. Del. Oct. 23, 2018) ............................................................................14

*In re Mesa Power Grp, LLC*,
    2012 WL 6060941 (D.N.J. Nov. 20, 2012) ............................................................................17

*In re Mota*,
    2020 WL 95493 (D. Del. Jan. 8, 2020)....................................................................................3

*In re O'Keeffe*,
    646 F. App'x 263 (3d Cir. 2016) ...........................................................................................18

*In re Oxus Gold PLC*,
    2007 WL 1037387 (D.N.J. Apr. 2, 2007) ..............................................................................15

*Pinchuk* v. *Chemstar Products LLC*,
    2014 WL 2990416 (D. Del. June 26, 2014)......................................................................17, 19

*In re Platebright Ltd.*,
    2014 WL 341568 (D.V.I. Jan. 30, 2014) .................................................................................3

*Via Vadis Controlling GmbH* v. *Skype, Inc.*,
    2013 WL 646236 (D. Del. Feb. 21, 2013)........................................................................17, 18

*Windt v. Qwest Commc'ns Int'l, Inc.*,
    544 F. Supp. 2d 409 (D.N.J. 2008) ........................................................................................18

## Statutes

28 U.S.C. § 1782 (2018) ............................................................................................... *passim*

## Rules

Fed. R. Civ. P. 26……………………………………………………………………………15, 19

Fed. R. Civ. P. 30……………………………………………………………………3, 11, 20

Fed. R. Civ. P. 45……………………………………………………………………...19

## Other Authorities

Femi Owolabi, *OPL 245:  Malami breaks silence on '35 percent asset recovery fee' deal with US firm*, CABLE (Sept. 13, 2020), at https://www.thecable.ng/opl-245-malami-breaks-silence-on-35-percent-asset-recovery-fee-deal-with-us-firm.................................................................................................................9

Lionel Faull & Oladeinde Olawoyin, *INVESTIGATION:  Inside Nigeria's opaque multibillion-dollar asset recovery deals*, PREMIUM TIMES NIGERIA (Apr. 28, 2020), at https://www.premiumtimesng.com/news/headlines/389975-investigation-inside-nigerias-opaque-multibillion-dollar-asset-recovery-deals.html.........................................................4

Lionell Faull & Oladeinde Olawoyin, *Nigeria silent over secret asset recovery deal that could see 'stolen' oil treasure paid to US firm*, Finance Uncovered (Sept. 11, 2020), at https://www.financeuncovered.org/investigations/nigeria-silent-over-secret-asset-recovery-deal-that-could-see-stolen-oil-treasure-paid-to-us-firm/.....................................8

Oladeinde Olawoyin & Lionel Faull, *FG silent as Nigeria risks losing huge sums in opaque Malabu asset recovery deal*, Premium Times Nigeria (Sept. 12, 2020), at https://www.premiumtimesng.com/news/headlines/413912-fg-silent-as-nigeria-risks-losing-huge-sums-in-opaque-malabu-asset-recovery-deal.html.........................................9

*OPL245:  How Malami Authorised Signing of New Deal to Give American Firm 35 Per Cent of Recovered Money*, SAHARAREPORTERS (Aug. 21, 2020), at http://saharareporters.com/2020/08/21/opl245-how-malami-authorised-signing-new-deal-give-american-firm-35-cent-recovered-money...................................................................4

Eni S.p.A.("Eni") submits this memorandum in support of its application under 28 U.S.C. § 1782 ("Section 1782") seeking limited and targeted discovery from Poplar Falls, LLC ("Poplar Falls") and a number of apparently related entities: Drumcliffe Partners I LLC, Drumcliffe Partners II LLC, Drumcliffe Partners III LLC, Drumcliffe Partners III SMA I, LLC, Drumcliffe Partners IV LLC, and Drumcliffe Partners IV SMA1, LLC (each, a "Drumcliffe Entity," and, together, "Drumcliffe").  Poplar Falls and Drumcliffe (together, "Respondents") are all limited liability companies incorporated under the laws of Delaware.

## PRELIMINARY STATEMENT

Pursuant to 28 U.S.C. § 1782, Eni, an Italian corporation, seeks permission to serve targeted discovery for use in civil and criminal actions brought by the Federal Republic of Nigeria (the "FRN") and the Milan Public Prosecutor, respectively, against Eni in Milan, Italy (the "Italian Actions"), and an international arbitration claim brought by certain Eni subsidiaries[1] against the FRN under the bilateral investment treaty between the Netherlands and Nigeria and in accordance with the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States before the World Bank's ICSID tribunal sitting in Washington, D.C. (the "International Arbitration").  The Italian Actions and International Arbitration (collectively, the "Foreign Actions") arise principally from the same set of facts culminating in the 2011 purchase by Eni and Royal Dutch Shell PLC ("Shell") of a Nigerian oil prospecting license known as OPL 245, which confers exploration rights to a deep-water block located off the coast of Nigeria. Despite having repeatedly reaffirmed the validity of that transaction, the current FRN administration now refuses to abide by its obligations to Eni to convert OPL 245 into an Oil Mining License ("OML"), which grants mining rights to the block.  Instead, the FRN has reversed course,

---

[1] International B.V., Eni Oil Holdings B.V., and Nigerian Agip Exploration Limited.

waging a multi-jurisdictional litigation campaign against Eni and claiming that the April 2011 sale of OPL 245 was the product of corruption.  In these actions, the FRN—apparently seeking a financial windfall—has sought to "recover" (several times over) the entirety of the $1.092 billion purchase price for OPL 245, which Eni and Shell already paid to the FRN in 2011.

Across these proceedings, including the Foreign Actions, Eni rightly maintains that the 2011 sale of OPL 245 was not the product of corruption, but rather the result of good-faith negotiations that culminated in a transaction beneficial to all parties involved, *including* the FRN. Eni further intends to establish that the FRN's actions against Eni are driven by undisclosed interests that are financing the FRN's litigation through opaque, possibly unlawful arrangements with Respondents.  Respondents comprise litigation funders and their affiliates that are providing financial support to the FRN in connection with its many claims against Eni.  Eni seeks discovery from Respondents in order to establish certain claims and defenses in the Foreign Actions.  For the reasons set forth below, Eni respectfully requests that the Court grant its application.

Section 1782 permits "[t]he district court of the district in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person."  28 U.S.C. § 1782(a) (2018).  Eni's application satisfies these statutory requirements:  each of the Respondents is incorporated in this District; the requested discovery is "for use" in litigation before a foreign court (the Milan court) and an investor-state arbitration tribunal presiding over the International Arbitration; as a party to or the parent company of parties to these actions, Eni is an interested person; and the application does not require disclosure of privileged materials. *See In re Ex Parte Petition of Republic of Turkey for an Order Directing Discovery From Hamit Çiçek Pursuant to 28 U.S.C. § 1782*, 2020 WL 2539232, at *7-8 (D.N.J.

May 18, 2020); *In re Matter of Application of Oxus Gold PLC*, 2006 WL 2927615, at \*7 (D.N.J. Oct. 11, 2006).

Section 1782's discretionary factors, set forth in *Intel Corporation* v. *Advanced Micro Devices*, *Inc.*, 542 U.S. 241, 264-65 (2004), also strongly support granting Eni's application: (i) the Respondents are not parties to the Foreign Actions, and Eni is otherwise unable to obtain in the foreign tribunals the information it seeks here; (ii) the foreign tribunals would be receptive to the discovery that Eni seeks; (iii) Eni's application is not designed to circumvent foreign proof-gathering restrictions; and (iv) the discovery Eni seeks—narrow document discovery and Rule 30(b)(6) depositions—is neither unduly intrusive nor burdensome. Granting the application would also further the "twin aims" of Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Biomet Orthopaedics Switzerland GmbH*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 252). For these reasons and those set forth below, Eni respectfully requests that the Court grant this application, which is properly filed *ex parte*.[2]

---

[2] Courts in this Circuit have repeatedly recognized that section 1782 applications made on an *ex parte* basis are properly filed and routinely granted. *See*, *e.g.*, *In re Mota*, 2020 WL 95493, at \*1 (D. Del. Jan. 8, 2020) ("Discovery applications under § 1782 are often granted ex parte because, inter alia, witnesses and other recipients can 'raise[ ] objections and [otherwise] exercise[ ] their due process rights by motions to quash.'"); *In re Ex Parte Petition of Republic of Turkey*, 2020 WL 2539232, at \*3 ("'[An] *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782,' in part because the person subpoenaed may exercise their due process rights with a motion to quash."); *In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*, 2013 WL 6164435, at \*2 (E.D. Pa. Nov. 22, 2013) ("Any fair interpretation of § 1782(a)'s plain language . . . should read it to encompass *ex parte* proceedings[.]"); *In re Platebright Ltd.*, 2014 WL 341568, at \*6 (D.V.I. Jan. 30, 2014) ("[I]t is common for parties to request and obtain [§ 1782] orders authorizing discovery *ex parte*[.]").

## BACKGROUND

A.     **The Parties**

Eni is an Italian multinational oil and gas company organized under the laws of Italy.  (Declaration of Nicolas Bourtin ("Bourtin Decl.") ¶ 2.)

Eni seeks discovery from seven Respondents, all of which are found in this District.  On information and belief, Respondents are all affiliated entities ostensibly engaged in asset recovery and litigation finance.  (*See* Bourtin Decl. Ex. C at 3, 41.)  Each Respondent is a limited liability company incorporated and registered with the same agent in Delaware.  (*See* Bourtin Decl. Ex. A; Bourtin Decl. Ex. B.)  Public filings appear to identify Poplar Falls and certain Drumcliffe Entities as related parties represented by Drumcliffe's apparent principal, James Little.  (*See* Bourtin Decl. Ex. C at 41.)  Furthermore, media reports have highlighted the role of Poplar Falls, Drumcliffe, and Mr. Little in funding the FRN's litigation against Eni related to the 2011 OPL 245 transaction.[3]  Media reports also publicized the agreement under which Poplar Falls was engaged to fund the FRN's litigation against Eni.[4]  (Abdulkareem Decl. App. A.)[5]  Respondents thus likely possess documents and information relevant to Eni's claims and defenses in the Foreign Actions.

---

[3] *See*, *e.g.*, *OPL245:  How Malami Authorised Signing of New Deal to Give American Firm 35 Per Cent of Recovered Money*, SAHARAREPORTERS (Aug. 21, 2020), at http://saharareporters.com/2020/08/21/opl245-how-malami-authorised-signing-new-deal-give-american-firm-35-cent-recovered-money;  Lionel Faull & Oladeinde Olawoyin, *INVESTIGATION:  Inside Nigeria's opaque multibillion-dollar asset recovery deals*, PREMIUM TIMES NIGERIA (Apr. 28, 2020), at https://www.premiumtimesng.com/news/headlines/389975-investigation-inside-nigerias-opaque-multibillion-dollar-asset-recovery-deals.html.

[4] As discussed below, Poplar Falls was engaged by the FRN's law firm—Johnson & Johnson—on behalf of the FRN.  *See OPL245:  How Malami Authorised Signing Of New Deal To Give American Firm 35 Per Cent Of Recovered Money*, *supra* note 3.  It is also reported that Johnson & Johnson engaged Drumcliffe Partners in 2016 to finance various OPL 245 related recovery cases.  (*See id.*)

[5] The Declaration of Hamid Abdulkareem, dated October 6, 2020, is attached as Exhibit D to the Bourtin Declaration.

**B.      The OPL 245 Transaction Between Eni, Shell, and the FRN**

The rights to OPL 245 have been the subject of litigation for nearly two decades. The license to the block was originally awarded in 1998 to a local company, Malabu Oil & Gas Limited ("Malabu").[6]  (Bourtin Decl. Ex. G ¶ 8.)  In 2001, however, the FRN unilaterally revoked Malabu's license and awarded OPL 245 to the Nigerian National Petroleum Corporation ("NNPC").  (*Id*. at ¶ 9.)  In 2003, the NNPC in turn awarded OPL 245 exploration rights to Shell subsidiary Shell Nigeria Ultra Deep Limited ("SNUD"), leading Malabu to initiate legal proceedings against the FRN and SNUD.  (*Id*. at ¶¶ 9-10.)  The FRN then again reversed course, revoking SNUD's license and re-awarding it to Malabu in 2006.  (*Id*. at ¶ 11.)  The relevant parties continued to battle over the title to OPL 245 for the next several years.  (*Id*.)

This series of allocations, revocations, and litigation clouded title to OPL 245 and caused the block to remain undeveloped for more than a decade.  In April 2011, in order to resolve the multiple competing claims to OPL 245, the FRN negotiated a series of contracts (the "Resolution Agreements") that collectively issued OPL 245, and awarded rights in the associated oil block ("Block 245"), to Eni and Shell and released all other claims to the block.  (*Id*. at ¶ 12.) Under a Resolution Agreement with the FRN, Eni (through its subsidiary Nigerian Agip Exploration Limited ("NAE")) and Shell (through its subsidiary Shell Nigeria Exploration and Production Company ("SNEPCO")) agreed to pay $1.3 billion to the FRN for exclusive rights to OPL 245, $1.092 billion of which was designated for the FRN to use to settle all existing claims in relation to Block 245.  (*Id*.)  Under a second Resolution Agreement, the FRN agreed to pay Malabu $1.092 billion in exchange for a complete release of Malabu's claims to Block 245.  (*Id*.)

---

[6] Malabu was later found to be beneficially owned by the then Minister of Petroleum, Dauzia Loya ("Dan") Etete, and allegedly co-owned by Mohammed Abacha, son of Sani Abacha, Nigeria's then President.  (*Id.* at ¶ 8.)

Finally, a third Resolution Agreement provided that the FRN would reallocate Block 245 and issue the OPL 245 license to SNEPCO and NAE in exchange for SNUD's release of claims against Malabu and the FRN relating to Block 245.  (*Id.*)  The Resolution Agreements thus allowed the FRN to clear title to OPL 245, enabling the production process finally to commence.

All three resolution agreements were approved by ranking members of the FRN's cabinet, including the Attorney General, the Minister of Petroleum Resources, and the Minister of Finance.  Accordingly, Eni began pre-development exploration work on the block.  As part of that work, Eni multiple times interacted with the Nigerian Content Development and Monitoring Board ("NCDMB") and the Department of Petroleum Resources ("DPR").  Neither agency has raised any objection with respect to the contents of the FRN Resolution Agreement.

In February 2018, Eni submitted to the DPR its application for conversion of OPL 245 into an OML.  Eni also held a total of four meetings with the DPR between March and April 2018 to discuss additional details.  In June 2018, the Minister of State acknowledged Eni's application and expressly confirmed that the Ministry, including President Muhammadu Buhari (who was also the Minister of Petroleum Resources), supported Eni's proposal for the development of the block.  Further meetings between the DPR and Eni took place in August and October 2018.  At no point in any of these interactions did the DPR, the NCDMB, or the Ministry of Petroleum Resources raise any questions or objections to the validity of the FRN Resolution Agreement.

C.     **The FRN's About-Face Regarding the Validity of the Transaction and Litigation Campaign Against Eni**

Notwithstanding the foregoing, the FRN has now elected to wage a multi-jurisdictional litigation campaign against Eni, including by bringing lawsuits against Eni in Italy and England and refusing to honor the FRN's obligations to grant Eni's application to convert OPL 245 into an OML.  As detailed further below, in each action the FRN has claimed that the

2011 award of OPL 245 to Eni and Shell was part of a corrupt scheme advanced by Eni and Shell along with certain then-current and former FRN officials and other intermediaries.[7]  (*Id.* at ¶ 8.) Additionally, in these actions the FRN has consistently sought repayment *by Eni* of the same $1.092 billion that Eni already paid as consideration for OPL 245.

Most recently, on December 12, 2018, the FRN filed a claim before the High Court of Justice of England and Wales against Eni and Shell, among others, alleging that Eni and Shell bribed FRN officials in connection with the 2011 OPL 245 acquisition, and seeking $1.092 billion in damages.  (*See id*. at ¶ 13.)  On May 22, 2020, the High Court of Justice dismissed the FRN's complaint on jurisdictional grounds.  (*Id.* at ¶ 95.)  The FRN twice sought leave to appeal and twice was denied, and was ordered to pay costs to Eni and Shell.  While the FRN's counsel has tendered partial payment of those costs, it would not confirm to Eni's counsel the source of the proffered funds.  As a result, Eni refused to accept the funds.

As described further below, the FRN recycled the same allegations against Eni in the pending proceedings in Milan.  In those proceedings, the FRN has *again* asked the court to order Eni to pay a penalty of $1.092 billion.  (*Id.* at ¶ 27.)

Finally, in Nigeria the FRN has unjustifiably stonewalled Eni's efforts to convert OPL 245 into an OML to begin production of the block.  The FRN has refused to grant Eni's conversion application until the conclusion of the very proceedings that the FRN itself elected to bring or join.  OPL 245 is set to expire in May 2021  If the FRN refuses to convert the license into an OML by that date, it will have effectively expropriated Eni's rights to the block by the mere

---

[7] As previously noted, Eni has consistently denied that it engaged in any corruption whatsoever, and maintains that the Resolution Agreements were the product of fruitful negotiations and of the FRN's exercise of legitimate sovereign powers in the Nigerian national interest.

passage of time, having itself brought about that result by initiating groundless legal actions funded by Respondents.

### D.     Eni's Need for Discovery Into the FRN's Apparent Misconduct

Eni has reason to believe that the FRN's litigation and obstruction efforts may be driven by undisclosed interests seeking unwarranted financial gain at the expense of Eni's contractual rights and the national interest of Nigeria in production of the OPL 245 oil block. This concern is supported by the troubling irregularities marking the FRN's recent efforts to extract billions of dollars from Eni through litigation.

*First*, as detailed above, the FRN's current litigation posture is irreconcilable both with its own prior execution of the OPL 245 transaction and with the continuing recognition of Eni's valid license by multiple departments within the Nigerian government. That tension suggests that the FRN has not acted in good faith in asserting claims against Eni.

*Second*, and relatedly, these actions have been financed through an improper arrangement involving Respondents. Despite being a sovereign government with its own lawyers, the FRN retained the law firm of Johnson & Johnson, which had no apparent prior experience in asset recovery, to litigate its claims regarding OPL 245.[8]  (*See* Abdulkareem Decl. ¶ 5.)  It is also unclear from the public record whether the FRN followed required administrative procedures in retaining Johnson & Johnson.  (*See id*. at ¶¶ 22-29.)

*Third*, Johnson & Johnson's contractual arrangement with Poplar Falls is also irregular, even beyond the oddity that a sovereign nation would rely on litigation funders. For

---

[8] *See* Lionell Faull & Oladeinde Olawoyin, *Nigeria silent over secret asset recovery deal that could see 'stolen' oil treasure paid to US firm*, Finance Uncovered (Sept. 11, 2020), at https://www.financeuncovered.org/investigations/nigeria-silent-over-secret-asset-recovery-deal-that-could-see-stolen-oil-treasure-paid-to-us-firm/ (according to well-known Nigerian lawyer Johnson & Johnson partner "didn't have any real experience" in asset recovery).

instance, certain clauses of the contract with Poplar Falls suggest that Poplar Falls may be entitled to as much as 35% of the total funds recovered by the FRN in its litigation against Eni. (*Id.* at ¶ 15).[9]  Such an arrangement, which could divert of hundreds of millions of dollars from Nigeria to Poplar Falls, contradicts prior representations of the Nigerian President that the government would award a maximum of 5% of any recovered assets to third parties.[10]  (*Id.*)

Furthermore, Aluko & Oyebode, a Nigerian law firm retained by Eni to analyze the Poplar Falls contract, concluded that the agreement was unenforceable under Nigerian law because it violates the common law doctrine of champerty, which renders agreements by one party to bear the costs of litigation on behalf of another party in return for a share of the proceeds unenforceable as a matter of public policy. (*Id.* at ¶¶ 7-13.)  The contract also appears to provide that any recovered funds will be held in an escrow account controlled by Johnson & Johnson before being disbursed to the FRN. (Abdulkareem Decl. App. A ¶ 6.)  This further suggests that Respondents are dictating the assertion of unfounded claims against Eni.

---

[9] The language of the agreement is so opaque and ambiguous that it is unclear what proportion of the proceeds of any recovery Poplar Falls is ultimately entitled to receive. (*Id.* at ¶¶ 14-20.)

[10] *See*, *e.g.*, Oladeinde Olawoyin & Lionel Faull, *FG silent as Nigeria risks losing huge sums in opaque Malabu asset recovery deal*, Premium Times Nigeria (Sept. 12, 2020), at https://www.premiumtimesng.com/news/headlines/413912-fg-silent-as-nigeria-risks-losing-huge-sums-in-opaque-malabu-asset-recovery-deal.html.  Apparently recognizing the impropriety of such an arrangement, Respondents and the FRN are now trying to cast doubt on its existence in public statements. Drumcliffe's public relations agency and its lawyers have stated that the leaked contract was only a draft. Lionell Faull & Oladeinde Olawoyin, *Nigeria silent over secret asset recovery deal that could see 'stolen' oil treasure paid to US firm*, *supra* note 8. Furthermore, on September 13, 2020, following calls from NGOs to share details about the arrangement, the FRN's Attorney General attempted to deny the existence of the agreement. *See* Femi Owolabi, *OPL 245: Malami breaks silence on '35 percent asset recovery fee' deal with US firm*, CABLE (Sept. 13, 2020), at https://www.thecable.ng/opl-245-malami-breaks-silence-on-35-percent-asset-recovery-fee-deal-with-us-firm. Yet, as one NGO has pointed out (*id.*), the FRN has proffered no evidence to support this position, and it is contradicted by the executed agreement between Johnson & Johnson and Poplar Falls that was leaked by the media.

Thus, a relatively unknown private law firm retained by the FRN entered into a litigation funding arrangement that is ostensibly void under the laws of Nigeria with what appears to be a special purpose vehicle—*i.e.*, Poplar Falls.  Poplar Falls potentially stands to recover hundreds of millions of dollars from a series of actions in which the FRN is attempting to recover the very $1.092 billion that Eni (and Shell) paid to the FRN as the purchase price for OPL 245.  What is more, the litigation funder—and not the FRN—appears to have first rights to the disbursement of any proceeds from the recovered funds, such that the FRN will not receive any payment from the recovered funds until all of the funder's claims are satisfied.  These facts strongly underscore Eni's concerns about the propriety of the FRN's litigation funding arrangement.

The FRN's appearance as a civil claimant before the Milan court has also been marked with unusual conduct suggesting that third parties could be controlling the FRN's litigation efforts.  For example, the FRN moved to join the Milan criminal proceedings as a civil party at a hearing on March 5, 2018 (Bourtin Decl. Ex. G ¶ 17)—the same date that the agreement between Johnson & Johnson and Poplar Falls was signed (Abdulkareem Decl. App. A at 1).  Two different attorneys then appeared at that hearing claiming to represent the FRN, each producing a power of attorney ostensibly signed by the same FRN official.  (Diodà Decl. ¶ 4.)[11]  Both of these attorneys subsequently withdrew from the action without explanation, and a third attorney then assumed representation of the FRN.  (*Id.*)  This rapid succession of counsel, some of whom had conflicting mandates, is far outside the regular course of litigation and suggests that multiple sources are exerting control over the FRN in connection with the Italian Actions.

---

[11] The Declaration of Massimiliano Diodà, dated October 6, 2020, is attached as Exhibit E to the Bourtin Declaration.

In sum, the FRN's inconsistent stance toward the FRN Resolution Agreement, coupled with the opacity of the Poplar Falls agreement, have given Eni reason to believe that the FRN's actions are driven by third parties seeking to earn illicit profits. Because the FRN has stonewalled requests made by Eni, NGOs, and the media for additional information regarding the terms of the litigation funding arrangement, Eni requires the discovery sought by this application in order to assert certain defenses and claims in the Foreign Actions, as detailed below.

### 1.    The Italian Actions

The Italian Actions consist of a criminal action filed against Eni and others by the Milan Public Prosecutor and a related civil claim filed against Eni and others by the FRN.[12] (Bourtin Decl. Ex. G ¶ 27.)  Both claims are currently being tried jointly.[13]  (*Id.* at ¶ 30.)  As Eni has contended, the Milan Public Prosecutor has failed to demonstrate that the OPL 245 transaction was corrupt.  Indeed, the U.S. Department of Justice and Securities and Exchange Commission each also conducted years-long investigations into Eni arising from the transaction, and both agencies ultimately declined to bring any enforcement action.  (Bourtin Decl. ¶ 3.)

Moreover, as noted previously, three separate FRN agencies have interacted with Eni on the basis of the agreements awarding OPL 245 to Eni and Shell, thus implicitly acknowledging the award's validity under Nigerian law.  By contrast, in its civil claim against Eni, the FRN has advanced the same allegations of illegality made by the Milan Public Prosecutor.  In defending against these unfounded allegations, Eni has asserted that the FRN Resolution

---

[12] As noted above, on March 5, 2018, the FRN sought leave to intervene as a civil claimant in the Milan Public Prosecutor's criminal case against Eni and Shell.  (Bourtin Decl. Ex. G ¶ 17.)

[13] The Milan court is expected to rule on the FRN's claims at the conclusion of the criminal trial, which is ongoing.  (Diodà Decl. ¶¶ 5-6.) The court's decision on the FRN's request will be subject to appeal.  (*Id.* at ¶ 7.)  Under Italian law, the court considering any appeal may receive new evidence that was not introduced at trial.  (*Id.* at ¶ 8.)

Agreement was the product of proper negotiations and resulted in a mutually beneficial arrangement in the national interest of Nigeria.  To buttress these defenses, Eni intends to show that the current administration is challenging the FRN Resolution Agreement because third party interests are influencing the FRN's litigation strategy, including through an opaque funding arrangement.  Eni accordingly needs discovery from Respondents into that funding arrangement.

## 2.     The International Arbitration

The discovery sought from Respondents is also relevant to the International Arbitration.  On September 14, 2020, Eni, through its subsidiaries,[14] filed a request for arbitration against Nigeria in accordance with the bilateral investment treaty and the ICSID Convention.  (*See* Partasides Decl. ¶ 3.)[15]  Like the Italian Actions, the International Arbitration concerns Eni's investment in OPL 245.  Specifically, Eni (through its subsidiaries) will contend that Nigeria's actions violate multiple provisions of the bilateral investment treaty by pursuing a campaign of unfounded claims against Eni and improperly conditioning the conversion of OPL 245 into an OML on the conclusion of proceedings commenced and/or joined by the FRN itself.  Discovery into the unusual arrangement funding the FRN's litigation efforts—and the individuals benefitting from that arrangement—will likely support Eni's claims.

## E.     The Limited Discovery Sought

Eni brings this Section 1782 application to obtain documents and deposition testimony critical to its claims and defenses in the Foreign Actions.  In particular, Eni seeks permission to serve each Respondent with a narrowly tailored subpoena for production of

---

[14] Eni International B.V., Eni Oil Holdings B.V., and NAE.

[15] The Declaration of Constantine Partasides, dated October 5, 2020, is attached as Exhibit F to the Bourtin Declaration.

documents and Rule 30(b)(6) deposition testimony regarding (1) the identities of Respondents' beneficial owners and/or ultimate stakeholders; (2) Respondents' relationship to current or former FRN officials; and (3) any contractual and/or financial arrangements that Respondents have entered into with respect to proceedings relating to OPL 245.

## LEGAL STANDARD

In evaluating an application under Section 1782, the Court must first determine whether "certain statutory requirements are met[.]"  *In re Biomet*, 742 F. App'x at 694 (citation omitted).  Specifically, "[t]he three statutory requirements under § 1782 dictate that the party from whom discovery is sought must reside or be found in the district; the discovery must be for use in a proceeding before a foreign tribunal; and the application must be made by an interested person." *In re Application of Gilead Pharmasset LLC*, 2015 WL 1903957, at *2 (D. Del. Apr. 14, 2015) (citations omitted).  In addition, the statute provides that "'[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."   28 U.S.C. § 1782(a) (2018).   This Circuit "consider[s] the statutory requirements 'modest prima facie elements.'"  *In re Biomet*, 742 F. App'x at 695 (quoting *In re Bayer AG*, 146 F.3d 188, 191-92 (3d Cir. 1998)).

Where, as here, those elements are satisfied, "the court may then consider other discretionary factors to determine whether to grant the application."  *Id.* (citation omitted).  The Supreme Court has identified four factors relevant to the court's exercise of discretion:  (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" such that "the need for § 1782(a) aid is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof

gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome[.]"  *Intel*, 542 U.S. at 264-65.

Finally, courts considering a Section 1782 application "must also bear in mind the twin aims of [the statute]: 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  *Matter of Wei for Order Seeking Discovery Under 28 U.S.C. § 1782*, 2018 WL 5268125, at *1 (D. Del. Oct. 23, 2018) (quoting *Intel*, 542 U.S. at 252).

## ARGUMENT

The Court should grant Eni's application because it satisfies the statutory requirements of Section 1782 and is strongly supported by the *Intel* factors.  Moreover, the discovery requested by Eni will be critical to Eni's claims and defenses in the Foreign Actions, and providing such discovery would further Section 1782's aims of helping non-U.S. litigants obtain necessary evidence for use in foreign proceedings and setting an example for foreign courts to provide reciprocal assistance to U.S. litigants.

## I.    ENI'S APPLICATION SATISFIES THE STATUTORY REQUIREMENTS FOR ISSUANCE OF THE SUBPOENAS UNDER SECTION 1782.

Eni easily satisfies the statutory requirements under Section 1782.  *First*, because the Respondents are incorporated in Delaware, there can be no dispute that they are "found" in this District.  *See Matter of HES (Caribbean) Int'l Holdings, S.R.L.*, 2020 WL 728892, at *2 (D.N.J. Feb. 13, 2020).

*Second*, Eni plans to use the requested discovery in current legal proceedings that have been brought by or against Eni before the Milan court and the ICSID tribunal—each of which are "foreign or international tribunal[s]" under Section 1782.  *See In re Petition of the Republic of Turkey for an Order Directing Discovery From Hamit Çiçek Pursuant to 28 U.S.C. § 1782*, 2020

WL 4035499, at *3 (D.N.J. July 17, 2020) ("[A]rbitral tribunals, such as the ICSID Tribunal, qualify as a foreign tribunal for purposes of section 1782").[16]  Moreover, as noted above, Eni seeks discovery for use in the Foreign Actions as relevant to its claims and defenses in those proceedings. Thus, the discovery sought is "for use" in the Foreign Actions under Section 1782.  *See In re Oxus Gold PLC*, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007) (evidence was "for use" in a foreign proceeding where it was relevant to the proceeding); *In re Application of Imanagement Servs. Ltd.*, 2006 WL 547949, at *3 (D.N.J. Mar. 3, 2006) (in connection with the "for use" requirement, noting that "it is sufficient that the applicant intend to offer the evidence to a foreign court").

      *Third*, Eni is a party to or parent of parties to both Foreign Actions.  Accordingly, Eni is an "interested person" within the meaning of Section 1782.  *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782[.]"); *In re Matter of Application of Oxus Gold*, 2006 WL 2927615, at *7 (the parent company of a named party in the foreign proceedings is an "interested person").

      *Fourth*, the application does not "require[] disclosure of privileged or other protected matter[.]"  *In re Ex Parte Petition of Republic of Turkey*,  2020 WL 2539232, at *8.  Eni seeks only non-privileged documents and deposition discovery.  To the extent that Respondents possess relevant privileged materials, they may withhold those materials consistent with Federal Rule of Civil Procedure 26.  *See In re Application of Global Energy Horizons Corp.*, 647 F. App'x 83, 85 (3d Cir. 2016) ("§ 1782 expressly incorporates the Federal Rules of Civil Procedure[.]").

---

[16] *See also In re Matter of Application of Oxus Gold*, 2006 WL 2927615, at *5 (holding that the international arbitration proceeding at issue constituted a "foreign or international tribunal" because it was "authorized by . . . the United Kingdom and the Kyrgyzstan Republic for the purpose of adjudicating disputes under the Bilateral Investment Treaty").

## II. THE DISCRETIONARY FACTORS UNDER SECTION 1782 WEIGH HEAVILY IN FAVOR OF GRANTING ENI'S APPLICATION FOR LEAVE TO SERVE DISCOVERY.

As this Circuit has held, courts "should apply the[*Intel*] factors in support of § 1782's 'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Biomet*, 742 F. App'x at 696 (quoting *Intel*, 542 U.S. at 252).  Consistent with these aims, "courts should treat relevant discovery materials sought pursuant to Section 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify denial of the application." *In re Bayer AG*, 146 F.3d at 196.  Here, *Intel* plainly militates in favor of granting Eni's application.

### A. The Evidence Eni Seeks is Likely to Be Unobtainable Without This Court's Assistance.

The first *Intel* factor is "whether the documents . . . sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid." *Kulzer* v. *Esschem*, *Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010) (citation omitted).  The relevant inquiry with respect to this factor is "whether the person from whom discovery is sought is a participant in the foreign proceeding[.]" *In re EWE Gasspeicher GmbH*, 2020 WL 127612, at *1 (D. Del. Mar. 17, 2020). As explained by the Supreme Court:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding, the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.  In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264.  Because Respondents here are third parties to the relevant proceedings, neither the Italian court nor the ICSID tribunal has jurisdiction to order the requested discovery. (*See* Diodà Decl. ¶ 11; Partasides Decl. ¶ 9.)  Thus, this factor clearly weighs in Eni's favor.  *See*, *e.g.*, *Pinchuk* v. *Chemstar Prod. LLC*, 2014 WL 2990416, at *2 (D. Del. June 26, 2014).

      **B.**     **The Foreign Tribunals Would Be Receptive to Information Obtained Pursuant to Section 1782.**

      Under the second *Intel* factor, courts "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  In assessing this factor, courts ask "whether the foreign court would consider the evidence revealed from a § 1782 order."  *Via Vadis Controlling GmbH* v. *Skype*, *Inc.*, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013) (citing *In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011)).  Courts in this Circuit have recognized that "[p]arties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence."  *Matter of HES*, 2020 WL 728892, at *3 (citations omitted).  Thus, "[w]hen analyzing this consideration, courts have determined that there was a lack of receptivity only by affirmative evidence, such as evidence showing that the foreign jurisdiction rejected outright federal judicial assistance from the United States."  *In re Application of Imanagement Servs. Ltd.*, 2006 WL 547949, at *4.

      Here, neither of the foreign tribunals has provided any indication that it would be unreceptive to evidence obtained pursuant to Section 1782.  The Italian courts do not prohibit a party from filing a Section 1782 application (Diodà Decl. ¶ 11), and while the International Arbitration tribunal has not yet been constituted, there is no reason that it would be unreceptive to the evidence sought by Eni.  Indeed, courts regularly grant Section 1782 requests seeking

discovery for use before investment treaty tribunals.  *See In re Mesa Power Grp., LLC*, 2012 WL 6060941, at \*7 (D.N.J. Nov. 20, 2012) (recognizing that "courts routinely approve § 1782 applications to aid the international arbitral proceedings authorized by international or inter-government treaties between sovereigns"); *In re Petition of the Republic of Turkey*, 2020 WL 4035499, at \*3 (holding that this factor weighed in applicant's favor in the context of an international arbitration before an ICSID tribunal).  In addition, Italy is a signatory to the Hague Evidence Convention,[17] indicating that the Italian courts are likely receptive to the evidence sought here.  *See*, *e.g.*, *In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016) (affirming district court's finding that because "Hong Kong is a signatory to the Hague Evidence Convention," "the Hong Kong court is likely 'receptive to American judicial assistance.'"); *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at \*10 (D.N.J. Jan. 10, 2019) (explaining that "the receptivity of a foreign court to U.S. federal judicial assistance may be inferred from its assent to treaties that promote such cooperation").  This factor thus supports granting Eni's application.

### C.      Eni's Application Is Not a Bad-Faith Attempt to Circumvent the Foreign Tribunals' Proof-Gathering Restrictions.

"The third *Intel* factor calls for a determination of whether the § 1782 request is essentially an attempt to circumvent foreign proof-gathering restrictions."  *Via Vadis*, 2013 WL 646236, at \*2.  Thus, in assessing this factor, courts look to "whether a foreign court has denied the moving party access to the documents at issue."  *INVISTA N. Am. S.A.R.L.* v. *M & G USA Corp.*, 2013 WL 1867345, at \*4 (D. Del. Mar. 28, 2013), *report and recommendation adopted sub nom. Invista N. Am. S.A.R.I.* v. *M7G USA Corp.*, 2013 WL 2456252 (D. Del. June 5, 2013).

---

[17] *See Windt* v. *Qwest Commc'ns. Int'l, Inc.*, 544 F. Supp. 2d 409, 427 n.27 (D.N.J. 2008), *aff'd*, 529 F.3d 183 (3d Cir. 2008).

Here, the relevant foreign tribunals have not denied requests for the same discovery sought by this application.  Indeed, the ICSID tribunal has not yet been constituted, and the Italian court has neither received nor denied requests for the same discovery sought here (Diodà Decl. ¶ 13).  This factor therefore supports granting Eni's discovery request.  *See*, *e.g*., *In re Chevron*, 633 F.3d 153 at 163 ("Without a definitive determination that the [foreign court] has denied Chevron access to the same documents that Chevron seeks in its section 1782 discovery application . . . it cannot be said that Chevron's section 1782 application is 'an attempt to circumvent foreign proof-gathering restrictions.'"); *Pinchuk*, 2014 WL 2990416, at *3 ("While neither of the foreign tribunals has requested assistance, they have also not affirmatively rejected assistance. . . .This factor thus weighs in favor of granting discovery.").

### D.      Eni's Narrow, Targeted Discovery Requests Are Not Unduly Intrusive or Burdensome.

Under the final *Intel* factor, courts consider whether the discovery requests are "unduly intrusive or burdensome" and should be "rejected or trimmed."  *Intel*, 542 U.S. at 265. Analysis of this factor, which "aligns with [Federal Rules of Civil Procedure] 26 and 45," is "virtually identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules."  *In re Application of Global Energy*, 647 F. App'x at 86 (citations omitted).  Ultimately, courts in this District have recognized that "[j]ust because a discovery [request] is broad does not mean that it is unduly burdensome."  *Pinchuk*, 2014 WL 2990416, at *3 (citation omitted).

Eni's limited discovery requests seek documents and testimony critical to its positions in the Foreign Actions, while avoiding unnecessary burden or intrusion upon Respondents.  As discussed, this discovery is highly relevant to Eni's claims and defenses in the Foreign Actions.  Moreover, the discovery requests here are reasonably tailored to the scope of the claims asserted by and against Eni in the Foreign Actions.  As a result, the requested discovery is

appropriate.  *See In re Application of Gilead*, 2015 WL 1903957, at *5 (finding this factor weighed in favor of granting Section 1782 application where the discovery request was "narrowly tailored and relevant to" the foreign proceedings).

## CONCLUSION

For the foregoing reasons, this Court should grant Eni's application pursuant to 28 U.S.C. § 1782 and enter the attached proposed order authorizing service on Respondents of subpoenas for production of documents and Rule 30(b)(6) depositions.

Dated:  October 6, 2020

LANDIS RATH & COBB LLP

*/s/ Rebecca L. Butcher*
Daniel B. Rath (No. 3022)
Rebecca L. Butcher (No. 3816)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington DE  19801
(302) 467-4400
rath@lrclaw.com
butcher@lrclaw.com
cree@lrclaw.com

and

Nicolas Bourtin (*pro hac vice pending*)
Beth D. Newton (*pro hac vice pending*)
Michele Materni (*pro hac vice pending*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000
bourtinn@sullcrom.com
newtonb@sullcrom.com
maternim@sullcrom.com

*Counsel for Applicant Eni S.p.A.*