**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re Ex Parte Application of Eni S.p.A. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | C.A. No. 20-mc-00334-MN |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ORDER
PERMITTING DISCOVERY, TO QUASH OR MODIFY SUBPOENAS, AND/OR FOR
PROTECTIVE ORDER**

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES……………………………………………………………… ii

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

      A.     The OPL 245 Fraud and the Italian Criminal Proceeding
           Against Eni.................................................................................... 2

      B.     The FRN's Involvement in the Italian Proceedings.................................... 5

      C.     Eni's Misrepresentations Regarding Respondents'
           Relationship to the FRN............................................................... 5

      D.     Eni's Arbitration Request .......................................................... 7

ARGUMENT .......................................................................................................... 8

    I.     THIS COURT SHOULD VACATE THE SECTION 1782 ORDER
        AND QUASH THE SUBPOENAS BECAUSE ENI'S APPLICATION
        FAILS TO DISCLOSE MATERIAL FACTS ....................................................... 8

    II.    THIS COURT SHOULD VACATE THE SECTION 1782 ORDER AND
        QUASH THE SUBPOENAS BECAUSE ENI DOES NOT SATISFY
        THE STATUTORY REQUIREMENTS FOR DISCOVERY UNDER
        SECTION 1782................................................................................ 11

    III.   THIS COURT SHOULD VACATE THE SECTION 1782 ORDER
        AND QUASH THE SUBPOENAS BECAUSE THE DISCRETIONARY
        *INTEL* FACTORS WEIGH AGAINST PERMITTING DISCOVERY............... 14

    IV.   THIS COURT SHOULD QUASH THE SUBPOENAS TO THE
        EXTENT THEY SEEK PRIVILEGED INFORMATION................................... 18

    V.    THIS COURT SHOULD ENTER A PROTECTIVE ORDER LIMITING
        THE USE AND DISCLOSURE OF ANY DISCOVERY ................................. 19

CONCLUSION.................................................................................................... 20

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Asia Mar. Pac. Ltd., In re*, 253 F. Supp. 3d 701 (S.D.N.Y. 2015) ......................................... 12, 13

*Axion Holding Cyprus Ltd., In re*, 2020 WL5593934 (D. Del. Sept.18, 2020).......................... 13

*Bayer AG, In re*, 146 F.3d 188 (3d Cir. 19978) ........................................................................... 11

*Chevron Corp., In re*, 633 F.3d 153 (3d Cir. 2011) ..................................................................... 14

*Caratube International Oil Co., In re, LLP* , 730 F. Supp. 2d 101
    (D.D.C. Aug. 11, 2010)............................................................................................... 14, 15

*Carlye Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846
    (Del. Ch. Feb. 24, 2015) .................................................................................................. 18

*Charge Injection Techs., Inc. v. E.I. DuPont De Neumours & Co.*, 2015 WL 1540520
    (Del. Super. Ct. Mar. 31, 2015) ...................................................................................... 18

*Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014 (D. Ariz. 2020)........................... 18, 19

*Departments of Antioquia, Caldas, Cundinamarca, & Valle del Cauca*,
    2016 WL 10707016 (S.D. Fla. Oct. 26, 2016).................................................................. 10

*Devon IT, Inc. v. IBM Corp.*, 2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) ................................ 18

*EWE Gasspeicher GmbH, In re*, 2020 WL 1272612 (D. Del. Mar. 17, 2020)............................ 13

*Fagan, In re*, 2019 WL 8011742 (C.D. Cal. May 10, 2019) ........................................................ 17

*Fortress Inv. Grp. v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) ............................................. 11

*Gilead Pharmasset LLC, In re*, 2015 WL 1903957 (D. Del. Apr. 14, 2015) .............................. 15

*Glob. Energy Horizons Corp., In re*, 647 F. App'x 83 (3d Cir. 2016) ........................................ 16

*Green Development Corp. S.A. De C.V. v. Zamora*, 2016 WL 2745844
    (S.D. Fla., May 10, 2016) ............................................................................................. 9, 10

*Int'l Oil Trading Co., In re*, 548 B.R. 825 (S.D. Fla. 2016) ....................................................... 18

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ........................... 13, 14, 15, 16

*Intel Corp. Microprocessor Antitrust Litig., In re*, 2008 WL 4861544
  (D. Del. Nov. 7, 2008) ......................................................................................... 11

*Islamic Republic of Pakistan Pak. v. Arnold & Porter Kaye Scholer LLP*,
  2019 WL 1559433 (D.D.C. Apr. 10, 2019) ...................................................... 13

*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
  2018 WL 466045 (W.D. Pa. Jan. 18, 2018)....................................................... 18

*Loop AI Labs Inc v. Gatti*, 2015 WL 5522166 (N.D. Cal. Sept. 18, 2015) ................................. 20

*Maine Audubon Soc. v. Purslow*, 907 F.2d 265 (1st Cir. 1990) ..................................................... 8

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ........................................................................ 12, 13

*Nejapa Power Co. LLC*, 341 F. App'x 821 (3d Cir. 2009)............................................................ 11

*Pinchuk v. Chemstar Prods. LLC*, 2014 WL 2990416 (D. Del. June 26, 2014).................... 14, 15

*Procter & Gamble Co. , In re*, 334 F. Supp. 2d 1112 (E.D. Wis. 2004) ...................................... 11

*Republic of Kazakhstan Kaz. v. Biedermann Int'l*, 168 F.3d 880 (5th Cir.1999) ........................ 15

*Storag Etzel GmbH, In re*, 2020 WL 1849714 (D. Del. Apr. 13, 2020)........................................ 13

*United States v. Fed'n of Physicians & Dentists, Inc.*, 63 F. Supp. 2d 475 (D. Del. 1999) ......... 17

*Via Vadis Controlling GmbH v. Skype, Inc.*, 2013 WL 646236 (D. Del. Feb. 21, 2013)............. 14

*WinNet R CJSC, In re*, 2017 WL 1373918 (S.D.N.Y. April Apr. 13, 2017)............................ 9, 10

## STATUTES

28 U.S.C. § 1782.......................................................................................................... passim

28 U.S.C. § 1782(a) ........................................................................................................... 18

## RULES

Fed. R. Civ. P. 45 ............................................................................................................... 16

Fed. R. Civ. P. 45(d)(3)(A)(iii), (d)(3)(B)(i)...................................................................... 16

Fed. R. Civ. P. 60(a), (b)(1), (b)(3), (b) ............................................................................... 9

Fed. R. Civ. P. 60(a), (b)(1), (b)(3), (b)(6) .................................................................. 11, 13

Respondents respectfully submit this Memorandum of Law in support of their Motion to Vacate Order Permitting Discovery, to Quash or Modify Subpoenas, and/or for Protective Order.

## INTRODUCTION

Eni's application for discovery is not a good-faith application for legitimate discovery for use in foreign proceedings. D.I. 1 (the "Application"). Premised on a selective and misleading recitation of the facts, Eni's Application is an effort by a criminal defendant facing imminent conviction for a billion-dollar fraud to exact retribution against a United States commercial litigation funder that has only indirectly assisted the Federal Republic of Nigeria ("FRN") – Eni's victim – in holding Eni responsible for its crimes. The proceedings in which Eni claims the discovery will be used are either so near completion that there is no realistic prospect that the court will admit new evidence, or so incipient that it cannot reasonably be said that the discovery will be relevant. Eni's overbroad requests also go beyond the narrow discovery this Court permitted, and blatantly invade attorney-client privilege and work product protections. This Court should not allow itself to be used for Eni's improper purposes.

The Court should vacate the Section 1782 Order granting Eni's Application, D.I. 8 (Oct. 15, 2020) ("Order"), and quash Eni's subpoenas to Respondents for three independent reasons: *First*, Eni's Application falls short of the heightened duty of candor required in any *ex parte* submission, and omits material facts that likely would have prevented the Order from issuing. *See infra* 8-10. *Second*, Eni fails to meet the statutory requirement that discovery be for use in a foreign proceeding, because the presentation of evidence in the criminal trial has concluded; and because the arbitration Eni has requested is not a "foreign proceeding" for the purpose of Section 1782, and, even if it were, there is no reason to believe that this discovery is for use in that proceeding, or for this Court to make that determination instead of the as-yet-to-be-formed arbitral panel. *See infra* 10-14. *Third*, when the full facts are taken into consideration, the

discretionary "*Intel* factors" weigh heavily against authorizing Eni to conduct wide-ranging, burdensome and intrusive discovery in this District.  *See infra* 13-17.

In the alternative, if the Court declines to vacate the Order or to quash the subpoenas, the Court should modify the subpoenas to exclude Eni's overreaching demands for sensitive and confidential information about non-party Respondents' investors, and for documents that plainly are privileged or otherwise protected from disclosure.  *See infra* 15-19.  The Court also should enter a protective order limiting the use and disclosure of any of Respondents' documents, information, or testimony.  *See infra* 19-20.

## STATEMENT OF FACTS

### A.    The OPL 245 Fraud and the Italian Criminal Proceeding Against Eni

The genesis of this proceeding, and the reason Eni currently is on criminal trial in Milan, was a billion-dollar fraud perpetrated against the people of the FRN involving Eni and its Nigerian subsidiary, corrupt Nigerian government officials, and others.  Briefly put, the former Minister of Petroleum for Nigeria, Daniel Etete, awarded the rights to exploit an oil field known as OPL 245 to a company named Malabu Oil and Gas Ltd. ("Malabu"), of which he secretly was part owner.  *See* Eni Mem. in Supp. of Appl. at 5 & n.6, D.I. 3 ("Eni Br.").  After several years of machinations, in-fighting, and litigation, the government (including some of the same officials who were part of the original award) agreed to a deal in which Malabu and Etete withdrew their claims and OPL 245 was awarded to Eni and its consortium, in exchange for a payment of $1.3 billion by the consortium, of which $1.092 billion went to Malabu (and, in turn, Etete, who paid the public officials).  *See id.*

In or around October 2013, more than four years before Eni alleges that Respondents had any involvement in this matter, the Public Prosecutor of Milan, Italy (the "Milan Prosecutor") commenced a criminal investigation (the "Italian Criminal Proceeding") into allegations that

senior executives of Eni and other oil companies had made corrupt payments to government officials, and had received or agreed to receive payments in the form of reverse commission or "kickbacks."  *See* Exs. 1, 2 at 29, J., *In re FRN*, No. 54772/13 (R.G.N.R.) & No. 4383/14 (R.G.GIP.) (Ord. Ct. of Milan (Italy) Sept. 20, 2018), Ruling No. 2232/18, & Transl. to English.[1]

In February 2017, the Milan Prosecutor recommended that various individuals and entities, including Eni, its current and former CEOs, and several other Eni executives, should stand trial on charges of international corruption, alleging, *inter alia*, that: (1) The OPL 245 award was made without competitive tendering, and at a price unilaterally established by Eni and the consortium; (2) Eni was well aware during the negotiations that Etete was the true beneficiary of the transaction, and agreed during the negotiations to the $1.092 billion payment to Malabu and Etete, who would pay the other government officials involved in the transaction; and (3) certain Eni executives personally would receive "significant sums" from the payment to Malabu as part of the transaction.  *See* Ex. 3 at 2-5, 7, Milan Prosecutor's Notice of Completion of Prelim. Investig., *In re FRN*, No. 54772/13 (R.G.N.R.) (Public Prosecutor's Office of Milan (Italy) Dec. 22, 2016).  On December 20, 2017, Justice Barbara of the Milan Court ordered Eni, its executives, and their codefendants to stand trial on these criminal charges.  *See* Ex. 4, Order, *In re FRN*, No. 54772/13 (R.G.N.R.) & No. 4383/14 (Ct. of Justice Milan (Italy) Dec. 20, 2017).

Two of the individual defendants in the Italian Criminal Proceeding, Gianluca DiNardo and Chuwuemba Obi, requested a "fast-track trial," separate from the main proceedings.  *See* Ex. 5, Decl. of Manfredi Bontempelli ¶ 11 (Nov. 17, 2020) ("Bontempelli Decl.").  Messrs. DiNardo and Obi were both convicted of international corruption, and sentenced to four years in jail.  *See*

---

[1] Citations to "Ex." are to the exhibits accompanying Declaration of David Ross (Nov. 18, 2020) ("Ross Decl."), filed concurrently herewith.

*id.* ¶ 11; Exs. 1, 2 at 312.[2]  In its ruling, while sentencing Messrs. Di Nardo and Obi, the Court made the following findings about Eni:

1. Eni was aware of the illegitimacy of the OPL 245 award to Malabu, of Etete's role in Malabu, and of the fact that "it was negotiating the purchase of OPL 245 with ETETE," "which should have induced the oil company and its top management to avoid any contact with him and with Malabu," *see* Exs. 1, 2 at 40, 100;

2. Eni paid $500,000 to a middleman to secure its place in the deal, *see id.* at 116, and there is "formidable evidence" that Eni also bribed Nigerian politicians and public officials, *see id.* at 101; and

3. Eni executives received significant kickbacks as part of the deal, and Eni's "top management" were aware that "the entire procedure for the purchase of OPL 245 by ENI was punctuated, from the outset and for its entire duration, by an impressive sequence of anomalies . . . and there is no logical justification for them, other than in the unlawful underlying sharing-out agreements claimed by the Public Prosecutor," *see id.* at 73, 179, 276.

The "main" trial against Eni, its executives, and their codefendants began on March 5, 2018.  Bontempelli Decl. ¶ 14.  All of the evidence has now been presented, including evidence obtained from abroad via letters rogatory, and the court has denied at least one request to admit additional new evidence.  *Id.* ¶¶ 20, 21.  The prosecution, the FRN, and some of the defendants have presented their closing arguments; and the remaining defendants will begin making their closing arguments at the next hearing, scheduled for November 25, 2020.  *Id.* ¶¶ 23, 24.  The judgment is expected in 2021.  *See id.* ¶ 25.

At this late juncture of the proceedings, the barriers to any effort by Eni to introduce new evidence are effectively insurmountable.  *See id.* ¶¶ 26-38.  As Professor Bontempelli explains, Italian law bars the admission of additional evidence at this stage of the case unless the trial court were to find that it is "*absolutely necessary*" and "*indispensable*," and that it would have "*a decisive impact on the ground for the conviction and for the result of the judgment*."  *See id.* ¶¶

---

[2] Both defendants are appealing their convictions.  *See* Bontempelli Decl. ¶ 11.

35-38.  Moreover, the court can only make such a finding if it is necessary to "remedy any incompleteness identified by the judge in the previous evidentiary submissions."  *See id.* ¶ 38.

### B.    The FRN's Involvement in the Italian Proceedings

In 2016, the Nigerian Economic and Financial Crimes Commission ("EFCC") was conducting an investigation in relation to the OPL 245 transactions, after being presented with allegations that Etete and several of his confederates committed "conspiracy, forgery, uttering forged documents, criminal misappropriation[,] and money laundering" in the course of the transactions.  *See* Ex. 6 at 450 ¶ 2, Letter from I. Magu (EFCC) to FRN (Sept. 1, 2016).  On September 1, 2016 – still 18 months before Eni claims that Respondents began "controlling" the FRN's litigation strategies – the EFCC advised Nigeria's Attorney General that the EFCC was helping Italian prosecutors in their investigation of "underhand dealings, bribery and corruption of Italian officials of the partly government owned ENI Petroleum" as well as the involvement in those crimes of Etete and others, and  recommended that the Attorney General "initiate relevant civil proceedings where they exist, against the Oil Companies."  *Id.* at 15.

Consistent with the EFCC's recommendation, the FRN successfully applied – over the opposition of the defendants – to be joined as a civil victim in the Italian criminal trial.  Bontempelli Decl. ¶¶ 14-16.  As a civil victim, the FRN will be entitled to damages if the court finds any of the defendants guilty of the crimes charged, and that those crimes caused harm to the FRN, then Eni will be liable for damages if the court finds that its executives were acting in the exercise of their duties.  *See id.* ¶¶ 30-31.   No further findings relating to the FRN or to fault on Eni's part are required.  *See id.*

### C.    Eni's Misrepresentations Regarding Respondents' Relationship to the FRN

Eni relies heavily in its *ex parte* Application on innuendo, rumor, and rank speculation about Respondents' supposed relationship with the FRN, sourced primarily to articles posted on the internet.  The facts are as follows.

1.      Respondents are affiliates of a United States commercial litigation funder, generally referred to as Drumcliffe, specializing in funding litigation brought by nation states and other victims of international corruption and fraud to locate and recover the spoils of that corruption, and to hold accountable corrupt actors and their confederates, such as Eni.  *See* Ex. 7, Decl. of James Little ¶ 2 (Nov. 17, 2020) ("Little Decl.").  The targets of that litigation have a vested interest in limiting Respondents' capital, and one way of doing that is to try to expose and harass Respondents' investors, as Eni is doing here.  *See id.* ¶ 3.

2.      In this case, contrary to the Application's repeated statements, Respondents have no direct relationship with the FRN, contractual or otherwise.  *See id.* ¶ 4.  All of its investors are domiciled in the United States, and none is a current or former FRN official.  *See id.* ¶ 5.

3.      The FRN appointed Johnson and Johnson Solicitors ("J&J"), a Nigerian law firm, as its recovery agent to pursue civil claims relating to the OPL 245 fraud.  Under that arrangement, to which Respondents are not parties, J&J is entitled to a small percentage of the FRN's recovery, in return for which it must cover all costs and expenses incurred in the pursuit of OPL 245 recoveries, including legal fees.  *See id.* ¶ 6; *see also* Ex. 8, Decl. of B. Olabode Johnson ¶ 4 (Nov. 18, 2020) ("Johnson Decl.").[3]  This arrangement enabled the FRN to pursue litigation to recover the fruits of the OPL 245 fraud at no cost or risk to the Nigerian people, while retaining the lion's share of any recovery.  *See* Johnson Decl. ¶ 5.

---

[3] Eni admits that Nigeria's Solicitor General has represented that the FRN has not awarded to any third party more than 5 percent of the FRN's total recovery.  Eni Br. at 9 & n.10.

4.        To fund those expenses, J&J entered into a series of agreements with
Respondents.  The FRN is not a party to those agreements.  *See* Little Decl. ¶ 7; Johnson Decl. ¶
6.  The agreements provide that in return for covering J&J's litigation expenses, Respondents are
entitled to a percentage of J&J's share of any recovery.  *See* Little Decl. ¶ 9; Johnson Decl. ¶ 7.
They also make clear that Respondents do not have any rights as to the direction, control,
settlement or conduct of the litigation.  *See* Little Decl. ¶ 9; Johnson Decl. ¶ 8.

5.        Any suggestion that Respondents are entitled to 35 percent of the FRN's total
recovery (or any amount expressed as a percentage of the FRN's total recovery) is inaccurate.
*See* Little Decl. ¶ 8; Johnson Decl. ¶ 7.  That suggestion is premised on Eni's misreading of an
unlawfully leaked copy of a version of a March 5, 2018 funding agreement that was superseded
by a different agreement effective the same date, and on a series of internet reports that similarly
misunderstood that same agreement.[4]  *See* Little Decl. ¶ 8.

**D.        Eni's Arbitration Request**

On September 14, 2020, Eni filed a request for arbitration against FRN with the
International Center of Settlement of Investment Disputes ("ICSID") in Washington, D.C. (the
"Arbitration Request").  *See* Eni Br. at 12.  Since Respondents have no direct relationship with
the FRN, they were only able to obtain a copy from Eni's counsel during meet-and-confer

---

[4] Even Eni's own Declarant, Hakeem Abdulkareem, admits that the most sensible
interpretation of the superseded March 2018 agreement is that Respondents are entitled to a
percentage of any amounts received by J&J, not a percentage of the total recovery by the FRN.
*See* Decl. of Nicolas Bourtin, Ex. D ¶¶ 16-17, D.I. 3 (Oct. 6, 2020) ("Bourtin Decl.").  Mr.
Abdulkareem's suggestion that Respondents secretly might be entitled to a share of the FRN's
recovery is based on his groundless speculation that unseen schedules to the Agreement might
include definitions of "Counterparties" or "Proceeds" different to those already in the Agreement
itself, and that the FRN might be an "unnamed" party to the contract, which, as explained above,
it is not.  *See id.* ¶¶ 18-19.  Although the issue is completely irrelevant, as explained below,
Respondents are willing to provide the Court with copies of all relevant funding agreements for
*in camera* inspection to confirm this, should the Court wish to review them.

process regarding Eni's subpoenas, and only after agreeing to certain conditions, including that Respondents may not file the Arbitration Request with this Court unless it is under seal.

Troublingly, Eni's Arbitration Request includes facts and allegations that are not consistent with the Application, and which undermine the conspiracy theory on which Eni premises its purported need for discovery from Respondents. Respondents are seeking leave to file the Arbitration Request under seal concurrently with this motion, and, with the Court's permission, will file it as an exhibit to their forthcoming reply brief, and will describe these inconsistencies therein.

## **ARGUMENT**

### I.  **THIS COURT SHOULD VACATE THE SECTION 1782 ORDER AND QUASH THE SUBPOENAS BECAUSE ENI'S APPLICATION FAILS TO DISCLOSE MATERIAL FACTS**

This Court's Order granting Eni's Application understandably was premised on Eni's *ex parte* representations about the pertinent facts and the purposes for which it seeks discovery from Respondents. Although an *ex parte* application is an accepted vehicle for seeking discovery under Section 1782, the one-sided nature of an applicant's presentation heightens the duty of candor and full disclosure that any litigant has to the court. *See*, *e.g.*, *Maine Audubon Soc. v. Purslow*, 907 F.2d 265, 268-69 (1st Cir. 1990) ("Where counsel appears ex parte . . . the customary checks and balances do not pertain—and the court is entitled to expect an even greater degree of thoroughness and candor from unopposed counsel than in the typical adversarial setting."); *see also* Del. Lawyers' R. of Prof'l Conduct No. 3.3(d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.").

Respondents respectfully submit that Eni's Application falls short of this heightened duty of candor, and that if this Court had been in possession of all of the relevant facts, the Order

would not have issued.  The Court should vacate the Order and/or quash the subpoenas for that

reason alone.  *See* Fed. R. Civ. P. 60(a), (b)(1), (b)(3), (b)6); *see also In re WinNet R CJSC*, 2017

WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (granting motion to quash because applicant failed

to disclose material facts) (citation omitted).

Among other things, Eni failed to disclose to the Court that the Italian Criminal

Proceeding is in *closing arguments*; that the court has already denied a motion to admit

additional new evidence; that the alleged importance of this discovery to Eni's defenses is not a

permissible ground for admitting it at this stage; and that it is therefore extremely unlikely that it

will be able to use any discovery it obtains from Respondents in the Italian Proceeding.[5]  *See*

*supra* 4-5.  Eni also fails to disclose that the FRN's "claim[ ]" that Eni conspired with corrupt

Nigerian officials to secure the right to OPL 245 was not concocted by the FRN as part of a

vindictive scheme that Eni purportedly is trying to expose.  Instead, it was alleged by the Italian

prosecutor, and has largely been confirmed by the judgment in the fast track trial.  *See supra* 2-4.

Finally, and as noted above, Eni does not disclose that its Arbitration Demand sets forth an

account of the pertinent events that is not consistent with the conspiracy theory on which it bases

the Application.  Having opted to make the Application on an *ex parte* basis, the responsibility

for bringing these potentially disqualifying facts to the Court's attention was Eni's.

Faced with similar material omissions, courts have not hesitated to vacate prior orders

permitting discovery or to quash subpoenas in their entirety.  In *Green Development Corp. S.A.*

*De C.V. v. Zamora*, 2016 WL 2745844 (S.D. Fla., May 10, 2016), for example, the court held

that the petitioner should have disclosed two related proceedings in which it also had sought

---

[5] The Diodà Declaration does mention that the FRN made its "final submission" to the court on September 9, 2020, but gives no indication that this submission was part of the closing arguments for the entire case.  *See* Bourtin Decl., Ex. E ¶ 4.

similar discovery for use in the same foreign proceeding, in addition to the fact that one of those courts had denied its application. *See id.*, at *3. The court also found that the petitioner had failed to disclose that the only evidence of the respondent's alleged wrongdoing (which was the sole premise for the application) was an anonymous phone call. *See id.* The court "view[ed] the failures to disclose as strategic," and it granted the motion to quash and vacated its prior order. *Id.*, at *7.

Similarly, in *WinNet*, the court found that petitioner had breached its duty of candor by obfuscating the chronology of various related foreign proceedings, and by failing adequately to disclose adverse rulings and a voluntary dismissal in those proceedings. *See* 2017 WL 1373918, at *9 (concluding that "it is difficult to draw any conclusion but that [petitioner] feared that a candid description of the litigation would have undermined if not defeated its application"). Here, Eni failed to disclose the fact that the Italian Proceedings are in their final stages and no longer accepting evidence, and that the same court has already found that Eni participated in the OPL fraud. Finally, in *In re Departments of Antioquia, Caldas, Cundinamarca, & Valle del Cauca*, 2016 WL 10707016 (S.D. Fla. Oct. 26, 2016), the court vacated its prior order permitting discovery when it emerged that the petitioner had failed to disclose jurisdictional and other obstacles to proposed litigation in Colombia, which cast into doubt "whether the requested evidence will *likely* be of use in a judicial proceeding." *See id.*, at *2 (citation omitted). That is precisely what Eni's omissions cast into doubt.

Given the extent and materiality of Eni's omissions in the Application, Respondents respectfully submit that the Court should vacate its prior Order and quash each of Eni's subpoenas in its entirety.

## II. THIS COURT SHOULD VACATE THE SECTION 1782 ORDER AND QUASH THE SUBPOENAS BECAUSE ENI DOES NOT SATISFY THE STATUTORY REQUIREMENTS FOR DISCOVERY UNDER SECTION 1782

A Court may not permit discovery under Section 1782 unless it is "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782; *see also In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998). This requirement serves "to distinguish a request for useful discovery from a request that is designed merely to burden an opponent." *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1115 (E.D. Wis. 2004). Thus, courts require that the foreign proceedings in question must be within "reasonable contemplation" at the time of the application, *see In re Intel Corp. Microprocessor Antitrust Litig.*, 2008 WL 4861544, at *11 (D. Del. Nov. 7, 2008), and that the discovery actually will be "useful" in the foreign proceeding, *see Procter & Gamble*, 334 F. Supp. 2d at 1115. Eni cannot meet these requirements, and the Court should vacate its prior Order and quash the subpoenas. *See* Fed. R. Civ. P. 60(a), (b)(1), (b)(3), (b)(6).

A. Respondents do not dispute that the Italian criminal trial constitutes a "proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. Because of the current posture of the case, however, any actual use of the discovery Eni seeks is not within reasonable contemplation. As noted, the parties in the criminal proceeding are in the midst of presenting closing arguments, and as a result, the court almost certainly will not allow Eni to introduce new evidence. *See supra* 4-5; *see also Fortress Inv. Grp. v. KPMG, L.L.P.*, 798 F.3d 113, 118-22 (2d Cir. 2015) (finding petition insufficient because petitioners had no procedural ability to submit evidence to the foreign tribunal).[6]

_____

[6] It is telling in this regard that, Eni appears to have made no effort to stay the Italian Proceedings to obtain the discovery it now claims to need, or otherwise to preserve its ability to present it before closing arguments began. *See Comisión Ejecutiva Hidroeléctrica del Río Lempa v. Nejapa Power Co. LLC*, 341 F. App'x 821, 825 (3d Cir. 2009) (finding that applicant

Moreover, even if this procedural barrier did not preclude the presentation of additional evidence as a general matter, Eni offers no reason to believe the particular discovery it now seeks would serve any useful purpose in the criminal trial, because it has no bearing at all on Eni's guilt or innocence. Eni is on trial for conspiring to defraud the Nigerian people of more than a billion dollars. It offers no explanation how its theory that "third party interests are influencing the FRN's litigation strategy," Eni Br. at 12, would be a defense to those charges, given that the Italian prosecutor, not the FRN, is litigating the case, and given that Eni is on trial for crimes committed in 2011, seven years before Eni alleges Respondents began to influence the FRN. "FRN's litigation strategy" and its asset recovery agent's litigation financing arrangements are simply irrelevant to Eni's criminal liability. *See supra* 2-4.[7] Accordingly, discovery into those issues and strategy cannot be "for use" in the foreign proceeding. *See Mees v. Buiter*, 793 F.3d 291, 299 & n.10 (2d Cir. 2015) ("Of course, a request that fails to show that the materials sought will be of any use in the foreign proceeding would not satisfy the 'for use' requirement."); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 706-07 (S.D.N.Y. 2015) (denying application because "it is not intuitively obvious why (nor has Petitioner explained why) the location of [respondent]'s assets would be relevant or would increase Petitioner's chance of success in that proceeding."). The same is true for any appeal Eni might take. *See* Eni Br. at 11 n.13.[8]

---

did not intend to use evidence sought through Section 1782 application where applicant had not asked the arbitral tribunal to leave the record open pending the results of its application).

[7] The Court should disregard Eni's insinuation that the FRN's appearance as a civil victim involved "unusual conduct." Eni Br. at 10. The court heard the defendants' objections to the FRN's appearance at the time, and overruled them. *See supra* 5.

[8] To admit new evidence on appeal, the appellate court would have to find that it "had such a value that, if taken, they would have determined a different conclusion of the trial," s*ee* Bontempelli Decl. ¶¶ 39-45, which Eni has not shown to be even a remote possibility. In any event, prior to Eni being convicted and filing an actual appeal, discovery in aid of that appeal is certainly premature.

**B.**      Eni also has failed to show that the discovery it seeks should be permitted for use in the ICSID arbitration.  As a threshold matter, three decisions by courts in this District (including this Court) have held that a private arbitration is not a foreign proceeding for the purpose of Section 1782.  *See In re Axion Holding Cyprus Ltd.*, 2020 WL 5593934 (D. Del. Sept. 18, 2020); *In re EWE Gasspeicher GmbH*, 2020 WL 1272612 (D. Del. Mar. 17, 2020); *In re Storag Etzel GmbH*, 2020 WL 1849714 (D. Del. Apr. 13, 2020), *appeal pending*, No. 20-1833.[9]

In any event, Eni has offered no explanation why the discovery it seeks would serve any useful purpose in the arbitration.  *See Mees*, 793 F.3d at 299 & n.10; *Asia Mar. Pac.*, 253 F. Supp. 3d at 706-07.  Eni claims that it seeks discovery to support its allegations that the FRN has pursued unfounded claims against Eni and unfairly stopped cooperating with Eni's conversion of OPL 245 into an OML.  *See* Eni Br. at 12.  But Eni offers no explanation why the funding arrangements between *two non parties*, Respondents and J&J, could have any bearing on those allegations.  To the contrary, and as set forth above, the Arbitration Request includes facts and allegations that show that they have none.  *See supra*  7-8.  And, in any event, the relevance of, and need for this discovery should be for the arbitrators to decide.  As explained in more detail below, there is no reason for this Court to try to anticipate how the arbitral panel would rule on any request by Eni to seek this discovery.

---

[9] None of those cases concerned an ICSID arbitration specifically, but two of the opinions specifically distinguished *Islamic Republic of Pak. v. Arnold & Porter Kaye Scholer LLP*, 2019 WL 1559433 (D.D.C. Apr. 10, 2019), as contrary authority which allowed discovery for an ICSID arbitration, suggesting that their reasoning equally would apply here.  *See EWE Gasspeicher*, 2020 WL 1272612, at *2 n.2; *Storag Etzel*, 2020 WL 1849714, at *3 n.1.

III.  **THIS COURT SHOULD VACATE THE SECTION 1782 ORDER AND QUASH THE SUBPOENAS BECAUSE THE DISCRETIONARY *INTEL* FACTORS WEIGH AGAINST PERMITTING DISCOVERY**

This Court also should vacate its prior order and quash the subpoenas because three of the four of the discretionary *Intel* factors weigh heavily against allowing Eni to seek discovery from Respondents.  *See* Fed. R. Civ. P. 60(a), (b)(1), (b)(3), (b)(6); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).  (Respondents do not dispute that they are not a party to the Italian Criminal Proceeding.)

A.  The second *Intel* factor asks the Court to consider the receptivity of the tribunal to the discovery sought by the petitioner.  *Id.*  In assessing this factor, courts ask "whether the foreign court would consider the evidence revealed from a § 1782 order."  *Via Vadis Controlling GmbH v. Skype, Inc.*, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013) (citing *In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011)).  As explained above, there is no reason to believe that the court in the Italian Proceeding would consider any discovery Eni might obtain, for the simple reason that the presentation of evidence is now closed, and the court is hearing closing arguments.  Indeed, as noted above, the court has already denied a prior request to admit new evidence.

There similarly is no reason to think that a prospective ICSID arbitration panel would be receptive to the documents and information Eni seeks.  If and when the arbitration panel is convened, the panel will have ample opportunity to decide whether to consider the FRN's alleged motivations in bringing claims or delaying the conversion of OPL 245.  *In re Caratube International Oil Co., LLP* is instructive on this point.  730 F. Supp. 2d 101 (D.D.C. Aug. 11, 2010).  In that case, as here, the party seeking discovery had initiated an ICSID arbitration pursuant to a bilateral investment treaty.  *See id.* at 106; Eni Br. at 12.  The court acknowledged that there was no evidence that the panel would *reject* the requested discovery, but declined to

allow it because an integral aspect of the arbitration process is the expectation that the arbitrators will set the bounds of discovery, not the courts. *See Caratube*, 730 F. Supp. 2d at 106 ("Parties to an arbitration are 'free to set the procedural rules for arbitrators to follow.' This Court is reluctant, then, to interfere with the parties' bargained-for expectations concerning the arbitration process.'") (citation omitted); *see also Pinchuk v. Chemstar Prods. LLC*, 2014 WL 2990416, at *4 (D. Del. June 26, 2014) (denying discovery for use in international arbitration because the arbitrators had not had a chance to consider whether to allow it, which "caution[s] against unnecessary interference."). Here, of course, the ICSID arbitration panel has had no opportunity to decide whether to allow this type of discovery, because it has not convened. Eni offers no reason why this Court should anticipate (and possibly render moot) the arbitrators' eventual decision.

      **B.**      The third *Intel* factor also weighs against Eni's request, for similar reasons to the second. Given the current posture of the Italian Proceedings, Eni's Application plainly "conceals an attempt to circumvent foreign proof-gathering restrictions." *Intel*, 542 U.S. at 264-65. It may be true, as Eni contends, that "the Italian court has neither received nor denied requests for the same discovery sought here." Eni Br. At 19. But even if the court might have granted leave to seek this discovery while evidence was still being presented, it almost certainly would deny such a request now that closing arguments have begun. *See* Bontempelli Decl. ¶¶ 32-38; *supra* 4-5. Similarly, and as noted above, the ICSID arbitration panel has not yet had a chance to decide whether to allow this discovery, and the Court should not allow Eni to abuse Section 1782 to make a preemptive end run to evade any restrictions the panel may impose. *See Caratube*, 730 F. Supp. 2d at 106; *Pinchuk*, 2014 WL 2990416, at *4; *cf. Republic of Kaz. v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir.1999) ("Resort to § 1782 in the teeth of such [arbitration] agreements

suggests a party's attempt to manipulate United States court processes for tactical advantage");

*In re Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) ("[A] perception

that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately

to § 1782 can be a factor in a court's analysis.") (citation omitted).

    **C.**    Finally, the fourth *Intel* factor weighs heavily against Eni because the discovery it

seeks would be unduly intrusive and burdensome.  *Intel*, 542 U.S. at 264-65.  "Section 1782

expressly incorporates the Federal Rules of Civil Procedure" and the fourth factor therefore

"aligns with Rules 26 and 45."  *In re Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d

Cir. 2016).  Under Rule 45, this Court "must quash or modify" Eni's subpoena to the extent that

it "requires disclosure of privileged or other protected matter," and it may – and should – quash

or modify the subpoena to the extent that it requires "disclosing a trade secret or other

confidential research, development, or commercial information."  *See* Fed. R. Civ. P.

45(d)(3)(A)(iii), (d)(3)(B)(i); *see also Glob. Energy*, 647 F. App'x at 85-86 (a court's

"assessment of the fourth factor is virtually identical to the familiar 'overly burdensome' analysis

that is integral to the Federal Rules") (quoting Fed. R. Civ. P. 45).

    The information Eni seeks through the subpoenas it has issued to Respondents goes well

beyond the narrow, targeted discovery allowed by this Court.  *Compare* Order at 1-2 *with* Ex. 9,

Eni Subp. to Poplar Falls, LLP at 6 (Oct. 20, 2020).[10]  Eni demands the production of highly

sensitive and confidential information, including the identities of Respondents' investors and the

"amount, portion, and nature" of their investments; all documents and communications

exchanged between Respondents and anyone acting for the FRN (which includes J&J); and all

---

[10] The documents and information sought from each of the Respondent funds is
materially identical, so Respondents have only attached one of the subpoenas as an exhibit.

documents and communications exchanged between Respondents and "any other Person" regarding OPL 245.  *See* Ex. 9 at 6.  The disclosure of that information would be extremely damaging to Respondents and their investors, not only because it would be of immense value to their competitors, but also because Respondents' investors, like investors in any Delaware Corporation, expect Respondents to maintain their privacy and confidentiality.  *See* Little Decl. ¶ 11.  Disclosure also would be damaging to the interests of the people of Nigeria.  As set forth above, Respondents provide litigation funding for the litigation J&J is pursuing on behalf of the FRN to recover the spoils of the OPL 245 fraud.  Forcing Respondents to disclose not only their funding agreements with J&J, but also the identifying and financial information about Respondents' investors is likely to have a deleterious effect on Respondents' ability to attract further investments to fund that litigation, due to privacy concerns wholly unrelated to the merits of the FRN's underlying claim.  *See* Johnson Decl. ¶ 9.  This risks impeding the FRN's litigation efforts.

Given that Eni has failed to show any meaningful need for these materials in either of the foreign proceedings at issue, the Court should find that the fourth factor weighs against discovery as well, and deny it.  *See*, *e.g.*, *United States v. Fed'n of Physicians & Dentists, Inc.*, 63 F. Supp. 2d 475, 479 (D. Del. 1999) (noting that "[f]inancial information of non-parties in a lawsuit has been held by courts to be private and not routinely available for discovery[,]" and declining to order disclosure of sensitive information that was only remotely connected to the underlying litigation); *In re Fagan*, 2019 WL 8011742, at *3 (C.D. Cal. May 10, 2019) (denying discovery because the "[a]pplication's request for bank records and related information is intrusive and burdensome, and Petitioner has not convincingly shown that he seeks this sensitive information for a purpose more substantial than a mere 'fishing expedition'") (citation omitted).

Because the discretionary factors weigh against discovery, the Court should vacate its prior Order and either quash the subpoenas entirely, or, in the alternative, modify them to remove any request for sensitive identifying or financial information about Respondents' investors.

## IV.   THIS COURT SHOULD QUASH THE SUBPOENAS TO THE EXTENT THEY SEEK PRIVILEGED INFORMATION

If the Court does not vacate the 1782 Order and/or quash the subpoenas in their entirety, it should at least quash the subpoenas to the extent they seek to documents protected by the attorney-client privilege and work product doctrine.  *See* 28 U.S.C. § 1782(a) ("A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.").  Eni acknowledged during the meet and confer process that it is not entitled to discover privileged documents and information, yet also makes no bones about the fact that it seeks discovery into the "FRN's litigation strategy."  Eni Br. at 12.  But that strategy epitomizes protected work product to which Eni is not entitled.

Courts consistently have held that the terms of funding arrangements and communications among parties, their counsel, and third-party litigation funders are protected by the work product doctrine and/or the attorney-client and common-interest privileges.  *See*, *e.g.*, *Charge Injection Techs., Inc. v. E.I. DuPont De Nemours & Co.*, 2015 WL 1540520, at *5 (Del. Super. Ct. Mar. 31, 2015) (terms of a third-party funder's financing agreement "were prepared in anticipation of litigation and reflect the type of attorney mental impressions and litigation strategies which are afforded nearly absolute protection from discovery under the work product doctrine."); *Carlye Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846, at *9 (Del. Ch. Feb. 24, 2015) (communications and documents exchanged with third-party funder "are entitled to work product protection" and "[t]hat protection is not precluded merely because the [discovery documents] may also serve a business function.") (citation omitted); *accord Devon*

18

*IT, Inc. v. IBM Corp.*, 2012 WL 4748160 at *1 (E.D. Pa. Sept. 27, 2012); *In re Int'l Oil Trading Co.*, 548 B.R. 825, 836 (S.D. Fla. 2016); *Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2018 WL 466045, at *5-6 (W.D. Pa. Jan. 18, 2018); *Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1021 (D. Ariz. 2020).  Here, Eni seeks precisely these types of privileged information, including the operative funding agreements with J&J, which have never been publicly disclosed, *see* Ex. 9 at Request No. 4; communications between Respondents and J&J, *see id.* at Request Nos. 2 & 3; and even communications between Respondents and their legal counsel, *see id.* at Request No. 4(ii).  Eni should not be permitted to abuse the judicial process by demanding clearly privileged documents or deposition testimony.

## V.   THIS COURT SHOULD ENTER A PROTECTIVE ORDER LIMITING THE USE AND DISCLOSURE OF ANY DISCOVERY

If this Court declines to vacate its prior Order and/or to quash Eni's subpoenas, then Respondents respectfully request that the Court enter a protective order to narrow the scope of the subpoenas, and to limit any disclosure by Eni of any documents or information it obtains.

As set forth above, public disclosure of the materials Eni requests would be extremely harmful to Respondents and their investors.  Respondents therefore request that this Court limit disclosure of any discovery.  *First*, any disclosure should be limited in the first instance to an inspection by Eni's outside counsel of record in this action of Respondents' funding agreements that relate to the OPL 245 fraud.  Given Mr. Little's Declaration, which makes clear that Respondents have no Nigerian investors, those documents will confirm that there is no basis for Eni's allegations of collusion, and that Respondents' agreements with J&J are fair and above board.  Any further disclosure or discovery (including any deposition testimony) should then be conditioned on Eni making an additional application to this Court, under seal, and on a non-*ex parte* basis, to explain why it is necessary and appropriate.

*Second*, any discovery that the Court then permits should be subject to a strict confidentiality order prohibiting its use for any purpose other than litigating the Italian Proceeding and the ICSID arbitration; limiting disclosure to counsel, expert witnesses, and the two foreign tribunals; and prohibiting any submission of the materials except under seal. Those are the conditions Eni insisted on before furnishing Respondents a copy of the Arbitration Request for use in this action, so Eni should not be heard to object to these limitations now. *See* Ex. 10, Email from B. Newton (Eni) to D. Ross (Drumcliffe) (Nov. 4, 2020).

*Finally*, given that Eni is a foreign entity, and may not as a practical matter be constrained by any protective order the Court might enter once any documents or information are removed from the United States, the Court should limit disclosure to individuals who execute an acknowledgement and agreement to be bound by the Court's order, and who expressly agree to submit to the jurisdiction of this Court for the purpose of enforcing the Court's order. *See*, *e.g.*, *Loop AI Labs Inc v. Gatti*, 2015 WL 5522166, at *9 (N.D. Cal. Sept. 18, 2015) (finding that a similar requirement was sufficient to alleviate concerns about enforcement of protective order against foreign defendants).[11]

## CONCLUSION

For the foregoing reasons, this Court should vacate its prior Order, D.I. 8, quash or modify Eni's subpoenas, or, in the alternative, condition any discovery as set forth above.

---

[11] In the parties' meet and confer, Eni expressed willingness to consider confidentiality protections if any documents are required to be produced pursuant to the subpoenas. If the parties are able to reach agreements on the specifics of such protections, Respondents will so advise the Court.

Dated:  November 18, 2020

Respectfully submitted,

*/s/ David E. Ross*
David E. Ross (#5228)
ROSS ARONSTAM & MORITZ LLP
100 South West Street, Suite 400
Wilmington, DE 19801
Tel.: (302) 576-1600
Email: dross@ramllp.com

*Counsel for Respondents*