# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In Re Ex Parte* Application of Eni S.p.A. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | : : : : : : : : : | Case No. 20-mc-00334-MN |

## MEMORANDUM IN OPPOSITION TO RESPONDENTS' MOTION TO VACATE ORDER PERMITTING DISCOVERY, TO QUASH OR MODIFY SUBPOENAS, AND/OR FOR A PROTECTIVE ORDER

LANDIS, RATH & COBB LLP
Daniel B. Rath (No. 3022)
Rebecca L. Butcher (No. 3816)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington, DE  19801
(302) 467-4400
rath@lrclaw.com
butcher@lrc.law.com
cree@lrclaw.com

SULLIVAN & CROMWELL LLP
Nicolas Bourtin (*pro hac vice*)
Beth Newton (*pro hac vice*)
Michele C. Materni (*pro hac vice*)
125 Broad Street
New York, NY  10004
(212) 558-4000
bourtinn@sullcrom.com
newtonb@sullcrom.com
maternim@sullcrom.com

December 7, 2020

*Counsel for Applicant Eni S.p.A.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ........................................................................................................................3

ARGUMENT .............................................................................................................................5

I.      ENI'S *EX PARTE* APPLICATION DESCRIBED ALL RELEVANT FACTS.................6

II.     ENI'S APPLICATION SATISFIES THE STATUTORY REQUIREMENTS
        FOR ISSUANCE OF THE SUBPOENAS UNDER § 1782. ..............................................8

        A.      The ICSID Arbitration Is an International Proceeding Under § 1782. ...................8

        B.      The Discovery Sought Is for Use in the Foreign Actions. ......................................9

                1.      The Discovery Sought Is Relevant to the Foreign Actions...................... 10

                2.      The Milan Court Has Authority To Admit The Evidence Sought in
                        the Italian Actions. .................................................................................. 12

III.    THE DISCRETIONARY FACTORS UNDER § 1782 WEIGH HEAVILY IN
        FAVOR OF PERMITTING THE DISCOVERY ENI SEEKS. ........................................13

        A.      Respondents Fail To Meet Their Burden To Show that the Foreign
                Tribunals Would Not Be Receptive to Discovery Sought Pursuant to §
                1782......................................................................................................................14

        B.      Eni's Application Is Not a Bad-Faith Attempt to Circumvent the Foreign
                Tribunals' Proof-Gathering Restrictions..............................................................17

        C.      Eni's Targeted Discovery Requests Are Not Unduly Intrusive or
                Burdensome. ........................................................................................................18

IV.     ENI DOES NOT SEEK THE DISCOVERY OF PRIVILEGED MATERIALS. .............19

V.      RESPONDENTS' REQUEST FOR A PROTECTIVE ORDER SHOULD BE
        DENIED................................................................................................................................20

CONCLUSION..........................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Application of Caratube Int'l Oil Co.*, *LLP*,
 730 F. Supp. 2d 101, 106-07 (D.D.C. 2010)..........................................................................16

*In re Application of Gilead Pharmassset LLC*,
 2015 WL 1903957 (D. Del. Apr. 14, 2015)............................................................................18

*In re Application of Global Energy Horizons Corp.*,
 647 F. App'x 83 (3d Cir. 2016) ..............................................................................................18

*In re Application of Imanagement Servs. Ltd.*,
 2006 WL 547949 (D.N.J. Mar. 3, 2006)........................................................................ *passim*

*In re Bayer AG*,
 146 F.3d 188 (3d Cir. 1998)..................................................................................................6, 7

*In re Chevron Corp.*,
 633 F.3d 153 (3d Cir. 2011)....................................................................................................17

*In re Departments of Antioquia, Caldas, Cundinamarca, & Valle del Cauca*,
 2016 WL 10707016 (S.D. Fla. Oct. 26, 2016)..........................................................................8

*Gbarabe* v. *Chevron Corp.*,
 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) ........................................................................19

*Green Development Corporation S.A. de C.V.* v. *Zamora*,
 2016 WL 2745844 (S.D. Fla. May 10, 2016) ..........................................................................8

*Islamic Republic of Pak.* v. *Arnold & Porter Kaye Scholer*, LLP, 2019 WL
 1559433 (D.D.C. Apr. 10, 2019) .............................................................................................9

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004)...................................................................................................... *passim*

*Inv. Vehicles* v. *KPMG*,
 798 F.3d 113 (2d Cir. 2015)....................................................................................................13

*INVISTA North America S.A.R.L.* v. *M & G USA Corp.*,
 2013 WL 1867345 (D. Del. Mar. 28, 2013) ..........................................................................17

*John Deere, Ltd.* v. *Sperry Corp.*,
 754 F.2d 132 (3d Cir. 1985)...............................................................................................3, 14

*In re Matter of Application of Oxus Gold PLC*,
  2006 WL 2927615 (D.N.J. Oct. 11, 2006)..................................................................15

*Matter of HES (Caribbean) Int'l Holdings, S.R.L.*,
  2020 WL 728892 (D.N.J. Feb. 13, 2020) .................................................................14

*In re Mesa Power Group, LLC*,
  2012 WL 6060941 (D.N.J. Nov. 20, 2012) ...............................................................16

*Montgomery Cnty.* v. *MicroVote Corp.*,
  175 F.3d 296 (3d Cir. 1999)......................................................................................19

*In re O'Keeffe*,
  646 F. App'x 263 (3d Cir. 2016) .........................................................................14, 18

*In re Oxus Gold PLC*,
  2007 WL 1037387 (D.N.J. Apr. 2, 2007) ...........................................................8, 9, 13

*In re Petition of the Republic of Turkey for an Order Directing Discovery
  From Hamit Çiçek Pursuant to 28 U.S.C. § 1782*,
  2020 WL 4035499 (D.N.J. July 17, 2020).............................................................9, 16

*Pinchuk* v. *Chemstar Prods. LLC*
  2014 WL 2990416 (D. Del. June 26, 2014)....................................................16, 17, 18

*Re XPRT Ventures, LLC* v. *eBay, Inc.*,
  2011 WL 13142141 (D. Del. June 15, 2011).............................................................20

*Robert Bosch LLC* v. *Pylon Manuf. Corp.*,
  263 F.R.D. 142 (D. Del. 2009) ..................................................................................19

*United States* v. *Ward*,
  169 F.2d 460 (3d Cir. 1948)........................................................................................5

*Via Vadis Controlling GmbH* v. *Skype, Inc.*,
  2013 WL 646236 (D. Del. Feb. 21, 2013) .................................................................17

*In re WinNet R CJSC*,
  2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017)..............................................................8

**Statutes**

28 U.S.C. § 1782................................................................................................... *passim*

**Rules**

D. Del. LR 7.1.1.........................................................................................................20

Fed. R. Civ. P. 26......................................................................................................18

Fed. R. Civ. P. 45 ..................................................................................................... 18

**Treaties**

Agreement on Encouragement and Reciprocal Protection of Investments between
 the United Kingdom of the Netherlands and Nigeria ............................................ 11

**Other Authorities**

*Cascade Investments NV* v. *Republic of Turkey*, ICSID Case No. ARB/18/4,
 Procedural Order No. 7, 26 March 2020 ................................................................ 16

*Fund for Protection of Investors' Rights in Foreign States* v. *The Republic of
 Lithuania*, UNCITRAL, Order on the Respondent's Request regarding the
 Claimant's application pursuant to Section 1782 of 28 U.S.C., 18 December
 2019 ....................................................................................................................... 16

Lionell Faull & Oladeinde Olawoyin, *Revealed: The Lagos law firm and US
 funder hoping to land a fortune recovering Nigeria's 'looted' oil assets*,
 Finance Uncovered (Apr. 28, 2020) ..................................................................... 10

*Mesa Power Group, LLC* v. *Government of Canada*, UNCITRAL, PCA Case No.
 2012-17, Procedural Order No. 3, 28 March 2013 ................................................ 16

Eni S.p.A. ("Eni") respectfully submits this memorandum in opposition to Respondents' motion to vacate this Court's order permitting discovery, D.I. 8 ("Order"), to quash or modify subpoenas, and/or for a protective order.[1]  Eni further requests that the Court order Respondents to comply with the subpoenas issued pursuant to the Order ("Subpoenas") in full, within two weeks of the entry of an order denying Respondents' motion.

## PRELIMINARY STATEMENT

Respondents' motion confirms that the Court has already correctly determined that Eni is entitled to discovery from Respondents under § 1782.  Respondents fail to identify a single statutory predicate for § 1782 discovery that Eni has not satisfied, and their arguments only underscore that the discretionary factors set forth in *Intel Corp.* v. *Advanced Micro Devices*, *Inc.*, 542 U.S. 241 (2004), strongly favor permitting such discovery here.  Nor do Respondents identify any basis to quash the Subpoenas, weakly raising purported privilege and confidentiality concerns that can easily be addressed through standard discovery procedures that (as Respondents acknowledge) the parties have already discussed.  Respondents instead attempt to distract from the dispositive considerations under § 1782 by lobbing misleading and inaccurate allegations against Eni.  That tactic fails, and Respondents' motion should be denied, for three principal reasons.

*First*, the discovery Eni seeks is relevant to both Foreign Actions.  After arranging, approving, and signing on as a party to the 2011 OPL 245 transaction, and repeatedly reaffirming it, the FRN reversed course, asserting claims alleging that the transaction was illegal and contrary to the Nigerian public interest, and ultimately relying on the very proceedings it had initiated or voluntarily joined to thwart production.  The discovery sought could be critical to explaining this

---

[1]  Capitalized terms not defined in this memorandum have the meanings assigned to them in the memorandum of law filed by Eni in support of its application to this Court for an order under 28 U.S.C. § 1782 (*see* D.I. 2 (the "Application" or "App.")).

about-face.  In particular, Eni intends to identify any links between Respondents (who stand to receive substantial sums as a result of the FRN's current litigation efforts) and current or former FRN officials or their associates seeking to obtain a financial windfall.  Such a connection would bear on the credibility of the FRN's newly adopted position regarding the 2011 OPL 245 transaction.  This information thus is relevant in the Italian Actions to both the question of Eni's guilt in the pending criminal case and the FRN's civil claim for damages as a purported victim.  It also relates to Eni's claim in the International Arbitration that the FRN violated the governing bilateral investment treaty ("BIT") by unfairly and unreasonably thwarting production from the OPL 245 block.

*Second*, Respondents do not meaningfully contest that the International Arbitration provides a valid basis for the discovery sought.  The motion should be denied and the Order enforced for that reason alone.  Respondents' principal argument regarding the Arbitration—that the § 1782 request is premature because a panel has yet to be convened—is irreconcilable with controlling law, which permits § 1782 discovery even where the relevant foreign or international proceeding *has yet to be filed*.  *See Intel*, 542 U.S. at 243 (proceeding need only be within "reasonable contemplation" for § 1782 to apply).  Under Respondents' view of the law, § 1782 would apparently permit a party to obtain discovery *before* instituting an arbitration, but preclude the same party from obtaining the same discovery once the arbitration has been filed, until a tribunal has been convened.  The Court should reject that tortured interpretation.

*Third*, Respondents also do not dispute that the Italian court is empowered to admit the evidence that Eni seeks, instead spending much of their brief arguing about the likelihood that the court would do so.  Their arguments on that point are wrong, not least because they all but ignore the relevance of the evidence sought to a determination of the FRN's damages on its civil

claim, and that new evidence could be admitted on appeal.  And even putting that aside, Respondents' argument fails because it raises precisely the sort of foreign law question that U.S. courts decline to take up in deciding whether to permit discovery under § 1782.  *See*, *e.g.*, *John Deere*, *Ltd*. v. *Sperry Corp*., 754 F.2d 132, 137 (3d Cir. 1985) ("[A] district court is not to predict the admissibility of discovered evidence in foreign tribunals."); *In re Application of Imanagement Servs*. *Ltd*., 2006 WL 547949, at *3 (D.N.J. Mar. 3, 2006) ("[I]t is sufficient that the applicant intend to offer the evidence to a foreign court.  Whether the foreign court will ultimately accept the evidence is beyond this Court's ability to determine.").

Lacking any legitimate basis to challenge the Application on the merits, Respondents resort to making inflammatory and misleading statements about Eni and the facts as described in its Application.  Much of Respondents' motion is devoted to baselessly attacking Eni's candor and assuming Eni's guilt in the Italian Actions (despite the fact that Eni is presumed innocent under Italian law and those proceedings remain ongoing).  What Respondents have *not* done, however, is contradict a single ground on which this Court's Order issued.  For these reasons and those set forth below, Respondents' motion should be denied, and they should be ordered to comply with the Subpoenas in full within two weeks of the entry of an order on the motion.

## BACKGROUND[2]

Eni seeks discovery for use in the Foreign Actions, which consist of the Italian Actions before the Milan court and the International Arbitration before an ICSID tribunal.  Both

---

[2] Eni set forth the background pertinent to this matter in the Application.  (*See* App. at 4-13.)  Eni provides in this memorandum additional factual background that is necessary to rebut the arguments asserted in Respondents' opening brief.  As used herein, "Diodà Decl." refers to the Declaration of Massimiliano Diodà (*see* Declaration of Nicolas Bourtin ("Bourtin Decl.") (Oct. 6, 2020) (D.I. 3), Ex. E); and "Diodà Supp. Decl." refers to the Supplemental Declaration of Massimiliano Diodà (*see* Supplemental Declaration of Nicolas Bourtin (Dec. 7, 2020) ("Bourtin Supp. Decl."), Ex. A).

Foreign Actions arise from the 2011 purchase by subsidiaries of Eni and Shell of a Nigerian oil prospecting license known as OPL 245.  The FRN structured, approved, and was a party to that transaction.  Following the acquisition of OPL 245, FRN officials repeatedly reaffirmed the FRN's approval of the transaction.  They continued to do so, notwithstanding the legal developments cited by Respondents, including the criminal investigation initiated by the Milan Public Prosecutor in 2013 and the investigation by the Nigerian Economic and Financial Crimes Commission beginning in 2016 (Resp. Br. at 2-3, 5; Decl. of David Ross ("Ross Decl."), D.I. 13, Ex. 6 at ¶ 2).

In February 2018, Eni applied to the FRN to convert OPL 245 into an oil mining license ("OML"), which would allow for production of the associated oil block to commence. Over the next several months, relevant FRN officials—including the Minister of State for Petroleum Resources (acting on behalf of the President)—engaged actively with Eni to progress Eni's application for conversion.  Then, however, the FRN abruptly changed course:

(1) on March 5, 2018 (the date of Respondents' litigation funding agreement with Johnson & Johnson ("J&J") (*see* App. at 10)), the FRN intervened as a civil claimant in the Milan Public Prosecutor's criminal case against Eni and others, seeking $1.092 billion in damages;

(2) on December 12, 2018, the FRN filed a claim (which was subsequently dismissed on jurisdictional grounds) against Eni and others before the High Court of Justice of England and Wales, again seeking $1.092 billion in damages (*see id.* at 7); and

(3) the FRN has unjustifiably obstructed Eni's attempts to convert OPL 245 into an OML, refusing to grant Eni's application until the conclusion of the very proceedings that the FRN itself elected to bring or join (*see id.* at 6).

To avoid addressing the merits, Respondents attempt to litigate the facts underlying these matters and the Foreign Actions, making inaccurate and misleading assertions about Eni's alleged conduct.  Because these claims are irrelevant to the questions before the Court, Eni will not address them except to correct Respondents' egregious misstatement that "the same court" presiding over the Italian Actions "has already found that Eni participated in the OPL fraud."

(Resp. Br., D.I. 12, at 10.)  As explained by Eni's counsel in the Italian Actions (Diodà Supp. Decl. ¶¶ 15-19), the "fast-track trial" referenced by Respondents was a separate proceeding presided over by a different judge that adjudicated charges against two other defendants.  Eni was not permitted to make appearances, file submissions, or present evidence in that trial, and the findings made in that trial are inadmissible in the Italian Actions.  (*Id.* at ¶ 18.)  Respondents' attempt to impugn Eni's underlying conduct thus should not be credited.  Indeed, Respondents ignore that the U.S. Department of Justice and Securities Exchange Commission both declined to take action against Eni following years-long inquiries into OPL 245.  (*See* Bourtin Decl. ¶ 3.)[3]

Based on the circumstances surrounding the FRN's unusual and opaque arrangement with Respondents (through J&J) and the FRN's reversal in the OPL 245 conversion, Eni reasonably suspects that the FRN's actions may reflect the influence of unidentified third parties seeking to profit at the expense of Eni's contractual rights and the Nigerian public interest.  (*See* App. at 8-12.)  Eni thus filed the Application on October 6, 2020, seeking limited discovery into the identity of the interests funding the FRN's litigation efforts and the terms of their funding arrangements.  That information will be directly relevant to Eni's claims and defenses in the Foreign Actions, as described in the Application and below.

## ARGUMENT

The statutory requirements under § 1782 are satisfied here, and the *Intel* factors weigh strongly in favor of permitting the discovery Eni seeks.  Respondents offer no valid basis to

---

[3] Respondents also submit testimony through their Italian lawyer, Manfredi Bontempelli, purporting to opine on whether the FRN has acted in good faith in connection with asserting claims against Eni.  (*See* Ross Decl., Ex. 5 ("Bontempelli Decl.") ¶¶ 46-57.)  Given Mr. Bontempelli's lack of any knowledge or expertise that could possibly bear on that question, the Court should disregard all such opinion testimony.  *Cf. United States* v. *Ward*, 169 F.2d 460, 462 (3d Cir. 1948) ("[I]t is . . . axiomatic that the 'expert' may not go [so] far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility.").

disturb the Court's proper and well-founded Order granting the Application and authorizing service of the Subpoenas.  Nor do Respondents' objections to the Subpoenas, which simply mirror the unfounded arguments made in their motion, support their refusal to provide the requested discovery.[4]  Accordingly, the Court should deny Respondents' motion and direct them to comply with the Subpoenas.  *See In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("[D]istrict courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application.").

## I.   ENI'S *EX PARTE* APPLICATION DESCRIBED ALL RELEVANT FACTS.

Respondents' assertion that the Application "falls short of the heightened duty of candor required in any *ex parte* submission, and omits material facts" (Resp. Br. at 1) is groundless. Putting aside that Respondents cite no controlling authority regarding this "heightened duty" (*see id.* at 8), Eni has amply disclosed the facts material to this Court's determination on the Application.  Indeed, despite Respondents' inflammatory rhetoric, most of the "facts" that Eni allegedly failed to disclose are actually Respondents' subjective (and meritless) *contentions* regarding the Foreign Actions.  Respondents assert, for example, that Eni "failed to disclose" that "the alleged importance of [the requested discovery] to Eni's defenses is not a permissible ground for admitting it at this stage; and that it is therefore extremely unlikely that it will be able to use any discovery it obtains from Respondents in the Italian Proceeding."  (*Id.* at 9.)  That is nothing more than the legal conclusion of Respondents' own Italian attorney (*see*, *e.g.*, *id.* at 11-12, 15),

---

[4] On November 16, 2020, Respondents served "omnibus" responses to the subpoenas, lodging blanket objections and refusing to produce any documents.  Respondents object that each document request "has no relevance to, and is unlikely to be admissible in any of the Foreign Actions"; "calls for discovery that is not permitted under 28 U.S.C. § 1782"; "calls for discovery that goes beyond that permitted under the Court's October 15, 2020 Order"; seeks privileged and confidential material; and "seeks to invade the well-founded privacy interests of Respondents and their general and limited partners."  (Bourtin Supp. Decl., Ex. B at 3-5.)

with whom Eni's counsel in the Italian Actions disagrees (*see* Diodà Supp. Decl. ¶¶ 5-8, 12).  Eni likewise had no obligation to "disclose" Respondents' factual mischaracterizations regarding the FRN's claims and the International Arbitration.[5]

Respondents' assault on Eni's candor thus boils down to two facts that they claim Eni failed to disclose:  (i) "that the Italian Criminal Proceeding is in *closing arguments*" and (ii) "that the court has already denied a motion to admit additional new evidence." (Resp. Br. at 9.) But Eni stated in the Application that the trial phase of the Italian Actions is concluding.  (*See*, *e.g.*, Diodà Decl. ¶ 4 ("On September 9, 2020[,] the FGN's attorney presented its final submission to the Milan court . . .").)  In any event, the precise stage of the Italian Actions is immaterial to the Court's decision on Eni's Application.   As Respondents' declarant acknowledges, Italian procedural rules allow for the submission of new evidence both at the current stage in the trial *and on appeal*, subject to satisfaction of statutory conditions.  (*See* Bontempelli Decl. ¶¶ 34-35; 39-45; *see also* Diodà Supp. Decl. ¶ 12.)  The ultimate admissibility of the evidence sought from Respondents is a question of Italian law that only Italian courts may determine.  It is not the role of this Court—much less Respondents—to resolve that question here.  *See*, *e.g.*, *In re Bayer* AG, 146 F.3d at 192 ("It 'would contradict the express purpose of [§] 1782' if the American court were required to predict the actions of another country's tribunal.") (quoting *John Deere*, 754 F.2d

---

[5] *See* Resp. Br. at 9 (asserting that Eni failed to disclose that the FRN's claim against Eni "was not concocted by the FRN[,]" but was "alleged by the Italian prosecutor, and has largely been confirmed by the judgment in the fast track trial" and claiming that Eni failed to disclose unspecified discrepancies between the facts in its Application and the Arbitration Demand).  Notably, Respondents do not actually identify any alleged "inconsistencies" between the Arbitration Demand and the Application.  To the extent that they do so for the first time on reply, as they purport to reserve rights to do (*id.* at 8), Eni intends to request leave to file a limited sur-reply to respond to such newly raised contentions.

at 136).[6]  It is also immaterial that the Milan court denied a different motion to admit additional evidence in the Italian Actions.  That motion had no connection to the evidence Eni seeks from Respondents, and its denial thus has no predictive value with respect to the evidence sought here. (*See* Diodà Supp. Decl. ¶ 11.)[7]

## II.   ENI'S APPLICATION SATISFIES THE STATUTORY REQUIREMENTS FOR ISSUANCE OF THE SUBPOENAS UNDER § 1782.

Respondents concede that Eni's Application meets two of the three statutory requirements under § 1782.  Their attempt to dispute satisfaction of the third—that the discovery sought is "for use in a foreign or international tribunal"—is baseless.  (Resp. Br. at 11.)

### A.   The ICSID Arbitration Is an International Proceeding Under § 1782.

As an initial matter, Respondents' claim that the International Arbitration is not an international proceeding under § 1782 is frivolous.  (*Id.* at 13.)  Courts in this circuit have explicitly

---

[6]  *See also*, *e.g.*, *In re Oxus Gold PLC*, 2007 WL 1037387, at *5–7 (D.N.J. Apr. 2, 2007) (permitting § 1782 discovery despite finding that "the [foreign] proceedings are currently before the [foreign court of appeal] (which, allegedly, does not consider evidence that was not presented to the court of first instance)"); *In re Application of Imanagement Servs*. *Ltd*., 2006 WL 547949, at *2-3 (enforcing § 1782 order even though evidence showed that the discovery sought might not be admissible in the foreign court, in part because the evidence did not "persuade that [the] requested discovery could *never* be used in the [foreign proceedings]") (emphasis added).

[7]  The cases cited by Respondents regarding the duty of candor in connection with *ex parte* submissions are also readily distinguishable.  The petitioner in *In re WinNet R CJSC* failed to disclose "adverse rulings" that "significantly undermined its application," including that it was seeking evidence to support a claim that had been "repeatedly rejected" by the foreign court.  2017 WL 1373918, at *5 (S.D.N.Y. Apr. 13, 2017).  Similarly, the court in *Green Development Corporation S.A. de C.V.* v. *Zamora* found that the petitioner failed to disclose that another court had denied a "closely-related application for [§] 1782 relief."  2016 WL 2745844, at *6 (S.D. Fla. May 10, 2016).  And in *In re Departments of Antioquia*, *Caldas*, *Cundinamarca*, & *Valle del Cauca*, the court vacated a § 1782 order where the petitioner had yet to institute a foreign proceeding and any such proceeding would have been foreclosed by the foreign jurisdiction's statute of limitations.  2016 WL 10707016, at *3 (S.D. Fla. Oct. 26, 2016).  None of these circumstances exists here:  Neither the Milan court nor the ICSID tribunal has been presented with, let alone rejected, the evidence for which Eni seeks discovery; Eni has not sought § 1782 relief from any other court; and Eni intends to use the requested discovery in two pending foreign proceedings, both of whose presiding tribunals can admit that discovery into evidence.

held that investor-state arbitrations—like the ICSID arbitration here—satisfy that condition.  *See*,

*e.g.*, *In re Petition of the Republic of Turkey for an Order Directing Discovery From Hamit Çiçek*

*Pursuant to 28 U.S.C. § 1782*, 2020 WL 4035499, at *3 (D.N.J. July 17, 2020) ("[A]rbitral

tribunals, *such as the ICSID Tribunal*, qualify as a foreign tribunal for purposes of [§] 1782")

(emphasis added).  Respondents' contention that a "*private* arbitration is not a foreign proceeding"

under § 1782 (Resp. Br. at 13 (emphasis added)), is beside the point.  *See Islamic Republic of Pak.*

v. *Arnold & Porter Kaye Scholer*, LLP, 2019 WL 1559433, at *7 (D.D.C. Apr. 10, 2019)

(distinguishing investor-state arbitrations from private arbitrations under § 1782).

### B.      The Discovery Sought Is for Use in the Foreign Actions.

Respondents' next assertion—that the discovery Eni seeks will not be permitted

"for use" in the Foreign Actions—also fails.  Critically, the provision of § 1782 requiring requested

discovery to be "for use in" a foreign proceeding imposes a low threshold.  *See*, *e.g.*, *In re*

*Application of Imanagement Servs. Ltd.*, 2006 WL 547949, at *3 (construing "for use" to mean

that "it is sufficient that the applicant intend to offer the evidence to a foreign court"); *In re Oxus*

*Gold PLC*, 2007 WL 1037387, at *6 (deeming "for use" standard satisfied where "the information

sought might prove of some relevance to the foreign proceedings").  Eni's Application easily clears

that bar with respect to the Foreign Actions.  In arguing otherwise, Respondents purport to graft

onto the liberal statutory standard a requirement that this Court predict the precise relevance and

admissibility determinations that the applicable foreign tribunals will ultimately make with respect

to the evidence Eni seeks to obtain.  Respondents then offer misguided interpretations of Italian

law and Eni's ICSID arbitration demand in an attempt to show that those tribunals would reject

such evidence.  Respondents are wrong on the merits, but the Court need not even reach those

questions because § 1782 does not require the sort of foreign-law guesswork that Respondents

urge the Court to undertake.  *See*, *e.g.*, *In re Application of Imanagement Servs.*, 2006 WL 547949,

at *2 (holding that evidence was "for use" in foreign proceeding and rejecting respondent's request that court "figure out a [foreign] court's discovery decisions in advance of its making them").

### 1.    The Discovery Sought Is Relevant to the Foreign Actions.

Respondents contend principally that the requested discovery would not "serve any useful purpose" in the Foreign Actions.  (Resp. Br. at 12–13.)  That is wrong.  Eni expects to use evidence reflecting the identities of the persons funding the FRN's baseless litigation (i) in seeking compensation for the FRN's violation of its obligations under the BIT, and (ii) to impugn the FRN's credibility and request for damages in the Italian Actions.  Eni reasonably believes that the FRN's litigation and obstruction efforts are driven by undisclosed interests seeking to gain a financial windfall.  (*See* App. at 8-11.)  In particular, Eni seeks to discover whether current or former FRN officials or their associates stand to gain from the FRN's litigation campaign against Eni.  Eni's concern in this regard, which has been echoed by several NGOs,[8] is supported by the many disconcerting oddities relating to the FRN's litigation funding arrangement and its about-face in the OPL 245 conversion process.  (*Id*.)

Respondents deride these concerns as "rank speculation" (*see* Resp. Br. at 6), but their own motion lends Eni's position further support.  For instance, Respondents attack Eni's understanding—shared by public commentators (*see* App. at 4 n.3)—that Respondents may be entitled to as much as 35% of the FRN's recovery on its claims against Eni, potentially amounting to hundreds of millions of dollars.  But they decline to correct this alleged "misreading" (Resp. Br. at 7) by specifying the percentage of recovered funds to which they are actually entitled.

---

[8]  *See, e.g.*, Lionell Faull & Oladeinde Olawoyin, *Revealed:  The Lagos law firm and US funder hoping to land a fortune recovering Nigeria's 'looted' oil assets*, Finance Uncovered (Apr. 28, 2020),  at  https://www.financeuncovered.org/investigations/revealed-the-lagos-law-firm-and-us-funder-hoping-to-land-a-fortune-recovering-nigerias-looted-oil-assets/ (quoting a statement by a consortium of anti-corruption groups).

Respondents instead state cryptically that J&J is entitled to a "small percentage" of any recovered funds, and that they in turn will receive "a percentage" of J&J's share.  (Ross Decl., Ex. 8 ("Johnson Decl.") ¶ 4; Resp. Br. at 6.)  Precisely how much Respondents refuse to say.

Further, the Declaration of James Little states only that "Respondents have no *direct* relationship with the FRN" and that "none [of Respondents' investors] is a current or former FRN official."  (Ross Decl., Ex. 7 ("Little Decl.") ¶¶ 4-5 (emphasis added).)  That carefully crafted assertion appears calculated to avoid making any representation regarding *indirect* relationships between Respondents and current or former FRN officials or their associates, which easily could take the form of beneficial interests through corporate entities.  Respondents' motion thus only increases Eni's reasonable suspicion that the discovery it seeks will reflect such improper connections, which would bear directly on Eni's contentions in the Foreign Actions.

With respect to the International Arbitration, Eni contends that the FRN has pursued unfounded claims against Eni and used those claims as the purported basis for its arbitrary refusal to honor Eni's entitlement to the conversion of OPL 245, in violation of the BIT.[9]  Confirmation that the FRN's claims against Eni are driven by private financial incentives could bear on Eni's argument that it has been subjected to unreasonable and inequitable treatment by the FRN.

The requested discovery also will serve at least two purposes in the Italian Actions. *First*, Eni expects to use such discovery to defend against the FRN's claim for damages from Eni. Contrary to Respondents' incorrect assertion that "the Italian prosecutor, not the FRN, is litigating the case" (Resp. Br. at 12), the FRN is itself a party to the Italian Actions, pursuant to a mechanism

---

[9]  *See* Agreement on Encouragement and Reciprocal Protection of Investments between the Kingdom of the Netherlands and Nigeria, Article 3(1) (obligating FRN to "ensure fair and equitable treatment" of Eni's investment and not to impair that investment "by unreasonable or discriminatory measures"), at https://treaties.un.org/doc/Publication/UNTS/Volume%202240/v2240.pdf.

under Italian law.  (*See* App. at 11, n.12.)  In that capacity, the FRN has embraced the prosecution's allegations and argued that Eni should be ordered to pay the FRN a penalty of at least $1.092 billion.  (*Id*. at 7, 11.)  If Eni is convicted, a judge will then determine the amount of damages owed by Eni to the FRN.  (Diodà Supp. Decl. ¶ 8.)  If current or former FRN officials or their associates stand to benefit personally from any such damages through Respondents, that fact may impact the court's assessment.  (*Id.*)

*Second*, Eni expects that the discovery it seeks will bear on the central claim that the 2011 OPL 245 transaction was corrupt.  The FRN has asserted that claim throughout the Italian Actions and in its recent closing argument.  (*Id.* ¶ 6.)  Eni has vigorously defended against this allegation, including on the ground that the FRN approved the 2011 transaction precisely because it was lawful and beneficial to the Nigerian public interest.  (*Id*.)  The Milan court thus must decide whether to credit the FRN's original position that the transaction was lawful or its newly adopted position that the transaction was corrupt.

### 2. The Milan Court Has Authority to Admit the Evidence Sought in the Italian Actions.

Respondents' remaining argument that the discovery sought by Eni is not "for use" in the Foreign Actions similarly relies on an improper manipulation of the statutory standard.  Respondents contend that because the Italian Actions have proceeded to closing arguments, "any actual use of the discovery Eni seeks is not within reasonable contemplation" in those proceedings.  (Resp. Br. at 11.)[10]  That is wrong.  Respondents do not dispute that the parties may still submit evidence to the Milan court, both at the current stage *and on appeal*.  (*Id.* at 4-5, 12 n.8.)  Respondents instead implore the Court to speculate about the likelihood that the Italian court will

---

[10]  This assertion misstates the applicable standard.  Section 1782 requires that "the '*proceeding*' for which the discovery is sought"—not use of the discovery obtained—be within "reasonable contemplation."  *Intel*, 542 U.S. at 243 (emphasis added).

ultimately admit that evidence (*id.* at 11, 12 n.8).  But U.S. courts consistently decline to answer such foreign-law questions in this context.  *See*, *e.g.*, *In re Oxus Gold PLC*, 2007 WL 1037387, at *6 (holding that "a party seeking a [§ 1782] discovery order . . . need not demonstrate that the information sought would be admissible in the foreign proceedings"); *In re Application of Imanagement Servs.*, 2006 WL 547949, at *2 (deeming evidence "for use" in foreign action and rejecting respondent's request that court "figure out a [foreign] court's discovery decisions in advance of its making them").[11]  This case underscores the propriety of that rule.  Eni strongly disagrees with Respondents' assertions regarding the potential admissibility of the requested discovery.  (*See* Diodà Supp. Decl. ¶ 5-12.)  This Court is thus faced with a dispute between two Italian lawyers about whether an Italian court would admit or exclude potential evidence. Section 1782 neither requires the Court to resolve that question nor permits Respondents to impede discovery by posing it.  *See In re Application of Imanagement Servs.*, 2006 WL 547949, at *2.

## III. THE DISCRETIONARY FACTORS UNDER § 1782 WEIGH HEAVILY IN FAVOR OF PERMITTING THE DISCOVERY ENI SEEKS.

As established by Eni's Application, the *Intel* factors weigh in favor of permitting the discovery sought by Eni.  Respondents' attempt to undermine that strong showing with respect to the second, third, and fourth *Intel* factors fails and should be rejected.[12]

---

[11]  The non-binding authority cited by Respondents is not to the contrary.  Respondents misleadingly claim that the court in *Certain Funds*, *Accounts &/or Inv. Vehicles* v. *KPMG*, 798 F.3d 113, 118-19 (2d Cir. 2015), denied § 1782 discovery "because petitioners had no procedural ability to submit evidence to the foreign tribunal."  (Resp. Br. at 11.)  But that decision was based on the fact that the petitioners *were not parties in* and could not present evidence in the foreign proceedings.  *Certain Funds*, 798 F.3d at 118–22.  The Second Circuit's holding regarding those petitioners' "procedural ability" to submit evidence plainly does not apply here, where Eni is a defendant in the Italian Actions and Italian rules permit the submission of the evidence sought.

[12]  Respondents concede that the first *Intel* factor weighs in Eni's favor.  (*See* Resp. Br. at 14.)

**A.     Respondents Fail to Meet Their Burden to Show That the Foreign Tribunals Would Not Be Receptive to Discovery Sought Pursuant to § 1782.**

The second *Intel* factor calls in relevant part for consideration of "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Respondents bear the burden to show a lack of receptivity through "affirmative evidence, such as evidence showing that the foreign jurisdiction rejected outright federal judicial assistance from the United States." *In re Application of Imanagement Servs.*, 2006 WL 547949, at *4; *see also Matter of HES (Caribbean) Int'l Holdings, S.R.L.*, 2020 WL 728892, at *3 (D.N.J. Feb. 13, 2020) ("[P]arties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence."). Respondents' motion fails by a wide margin to satisfy that burden.

As to the Italian Actions, Respondents attempt to show a lack of receptivity simply by repeating their claim that the Milan court is unlikely to admit the particular evidence sought here by Eni, and noting that the court recently rejected a different proffer of evidence unrelated to the discovery Eni now seeks. (*See* Resp. Br. at 14.) Those contentions improperly conflate the relevant question of whether a foreign tribunal is *generally* "receptiv[e] . . . to U.S. federal-court judicial assistance[,]" *Intel*, 542. U.S. at 264, with the irrelevant question of whether that tribunal, under its own procedural rules, would admit the *specific evidence* requested by Eni here. *See*, *e.g.*, *In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016) ("We have never required district courts to determine whether *particular* evidence would be admissible in a foreign court."); *John Deere*, 754 F.2d at 138 ("Nor can concern for the ultimate admissibility of the discovered material be argued as a limit on [§] 1782 orders. The [foreign] tribunal must necessarily decide the use to which such evidence is put."). Respondents do not even try to dispute that Italian courts are generally receptive to § 1782 discovery, as shown by Italy's execution of the Hague Convention (*see* App. at 18). Nor

do they contest that Italian procedural rules permit the submission of new evidence in the Italian Actions.  (*See* Diodà Supp. Decl. ¶¶ 9-12.)  Thus, even if their contention regarding the likelihood of admissibility were right (and it is not), Respondents fail to identify any reason why the second *Intel* factor would weigh against Eni as to the Italian Actions.

As to the International Arbitration, Respondents ask the Court to deny the requested discovery because "the ICSID arbitration panel has had no opportunity to decide whether to allow this type of discovery, because it has not convened."  (Resp. Br. at 15.).  That contention misstates the applicable standard.  The Supreme Court expressly held in *Intel* that "§ 1782(a) contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding."  542 U.S. at 247.  The Court held further that a § 1782 order may properly issue where the evidence is sought for use in foreign proceedings that have not even been initiated.  *Id.* at 258-59.  That ruling clearly contemplates permitting discovery under § 1782 before the applicable foreign tribunal has decided any discovery issues, much less ruled on the particular evidence sought by the petitioner.

Consistent with this controlling authority, courts routinely enforce § 1782 orders without analyzing whether the discovery sought would also be discoverable in the relevant foreign proceeding.  *See*, *e.g.*, *In re Matter of Oxus Gold PLC*, 2006 WL 2927615, at *8 (D.N.J. Oct. 11, 2006) ("This Court . . . need not consider whether the information sought . . . would be discoverable or admissible in the pending international arbitration proceeding.").  Moreover, investment treaty tribunals, including tribunals constituted under the ICSID Convention, have confirmed that they are receptive to evidence obtained under § 1782, in several instances permitting submission of such evidence even where it was obtained before the tribunal was

constituted—which is precisely the situation here.[13]   Unsurprisingly in light of those cases, Respondents do not identify a single decision rejecting discovery under § 1782 for the reasons they now ask the Court to adopt.[14]   The Court should reject Respondents' novel contention and uphold the Order and the Subpoenas.  *See In re Mesa Power Group*, *LLC*, 2012 WL 6060941, at *7 (D.N.J. Nov. 20, 2012) (recognizing that "courts routinely approve § 1782 applications to aid the international arbitral proceedings authorized by international or inter-government treaties between sovereigns"); *In re Petition of the Republic of Turkey*, 2020 WL 4035499, at *3 (holding that receptivity factor favored discovery in context of international arbitration before ICSID tribunal).

---

[13]  *See Cascade Investments NV* v. *Republic of Turkey*, ICSID Case No. ARB/18/4, Procedural Order No. 7, 26 March 2020 (Bourtin Supp. Decl., Ex. C), ¶ 29-30; *Mesa Power Group, LLC* v. *Government of Canada*, UNCITRAL, PCA Case No. 2012-17, Procedural Order No. 3, 28 March 2013 (Bourtin Supp. Decl., Ex. D), ¶¶ 64-65; *Fund for Protection of Investors' Rights in Foreign States* v. *The Republic of Lithuania*, UNCITRAL, Order on the Respondent's Request regarding the Claimant's application pursuant to Section 1782 of 28 U.S.C., 18 December 2019 (Bourtin Supp. Decl., Ex. E), ¶ 25.

[14]  The scant authority Respondents cite is inapposite.  In *Pinchuk* v. *Chemstar Prods*. *LLC*, the respondents had "already produced all documents [requested by the petitioners that were] located in the United States," and the Court's decision related only to "whether to enforce the remainder of the Petitioner's § 1782 request for Respondents' documents located in Cyprus."  2014 WL 2990416, at *2 (D. Del. June 26, 2014).  The circumstances also suggested that the petitioners were acting in bad faith.  *See id.* at *3 & nn.2-3 (noting that petitioners filed multiple § 1782 applications, each within a week of commencing the related foreign proceeding).  Similarly, the petitioner in *In re Application of Caratube Int'l Oil Co*., *LLP* belatedly filed a § 1782 petition more than a year after the tribunal implemented a discovery schedule based largely on the petitioner's own requested parameters, and "less than a month before discovery between the parties was to close." 730 F. Supp. 2d 101, 106-07 (D.D.C. 2010).  That is why the Court was "reluctant . . . to interfere with the parties' *bargained-for* expectations concerning the arbitration process."  *Id.* at 106 (emphasis added).  Indeed, investment treaty tribunals have specifically distinguished *Caratube* in expressing receptivity to § 1782 discovery obtained prior to tribunal constitution.  *See Mesa Power Group*, UNCITRAL, PCA Case No. 2012-17, Procedural Order No. 3 (Bourtin Supp. Decl., Ex. D), ¶¶ 64-65 (noting that, unlike in *Caratube*, "at least some" of the claimant's § 1782 petitions preceded constitution of the tribunal, and declining to "summarily reject—in advance of their filing—all the [§] 1782 documents that the Claimant may one day submit").

**B.**     **Eni's Application Is Not a Bad-Faith Attempt to Circumvent the Foreign Tribunals' Proof-Gathering Restrictions.**

Respondents' arguments regarding the third *Intel* factor largely repeat their contentions regarding the second and fail for the same reasons.  This *Intel* factor considers "whether the § 1782 request is essentially an attempt to circumvent foreign proof-gathering restrictions."  *Via Vadis Controlling GmbH* v. *Skype*, *Inc*., 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013).  In assessing this factor, courts look to "whether a foreign court has denied the moving party access to the documents at issue."  *INVISTA N. Am. S.A.R.L.* v. *M & G USA Corp*., 2013 WL 1867345, at *4 (D. Del. Mar. 28, 2013), *report and recommendation adopted sub nom. Invista N. Am. S.A.R.I.* v. *M7G USA Corp*., 2013 WL 2456252 (D. Del. June 5, 2013).  Respondents concede that neither the Italian court nor the ICSID arbitration panel has denied Eni access to the discovery sought here.  (Resp. Br. at 15.)  That undisputed fact alone tips the third *Intel* factor decisively in Eni's favor.  *See*, *e.g*., *In re Chevron* Corp., 633 F.3d 153, 163 (3d Cir. 2011) ("Without a definitive determination that the [foreign court] has denied . . . access to the same documents [sought in the §] 1782 discovery application . . . it cannot be said that [the] application is 'an attempt to circumvent foreign proof-gathering restrictions.'").

Ignoring that controlling authority, Respondents repeat their refrain that the Italian court "almost certainly" would not consider the evidence Eni seeks "now that closing arguments have begun."  (Resp. Br. at 15.)  That argument is irrelevant and meritless for the same reasons just discussed (*see supra* at 13-14).  Nor does Eni's Application bear any resemblance to the cases cited by Respondents as purported support for their allegation that Eni's request seeks "to abuse" § 1782 by "mak[ing] a preemptive end run to evade any restrictions the [arbitral] panel may impose."  (Resp. Br. at 15.)  *Compare Caratube*, 730 F. Supp. 2d at 108 (explaining that petitioner "side-stepped" discovery guidelines already agreed upon by parties and tribunal); *Pinchuk*, 2014

WL 2990416, at *3-4 & nn.2-3 (denying discovery where documents were located abroad and there was evidence petitioners were not acting in good faith); *In re Gilead Pharmassset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (denying discovery where petitioner could have sought discovery from respondents from that tribunal and failed to do so). Given the arbitral rulings cited above (*supra* at n.13), Eni has every reason to expect that the International Arbitration tribunal will accept the evidence Eni seeks. But even if it imposes restrictions on the use of that evidence, Eni will abide by them, thus "evading" nothing.

### C.    Eni's Targeted Discovery Requests Are Not Unduly Intrusive or Burdensome.

The final *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome," *Intel*, 542 U.S. at 265, under the same standard set forth in Federal Rules 26 and 45. *See In re Application of Global Energy Horizons Corp.*, 647 F. App'x 83, 86 (3d Cir. 2016). The Subpoenas plainly satisfy that requirement. They seek narrow categories of information about the identity of Respondents' investors, their direct and indirect connections with current or former FRN officials and their associates, and any transactions they have conducted relating to OPL 245. Respondents' efforts to paint those targeted requests as unduly burdensome are unavailing.

*First*, Respondents contend that the Subpoenas require the production of "highly sensitive and confidential information" that would be "of immense value to their competitors," and that Respondents' investors "expect Respondents to maintain their privacy." (Resp. Br. at 17.) Those conclusory statements, which fail to explain *why* the requested information would be of value to Respondents' competitors, cannot support a motion to vacate the Order or quash the Subpoenas. *Cf. In re O'Keeffe*, 646 F. App'x at 268 (§ 1782 discovery was not unduly intrusive or burdensome where "nothing in the record" supported such a finding).

*Second*, Respondents assert that disclosure of the requested information would be "damaging to the interests of the people of Nigeria" because revealing "identifying and financial

information about Respondents' investors is likely to have a deleterious effect on Respondents' ability to attract further investments to fund that litigation[.]"  (Resp. Br. at 16.)  Putting aside the dubious logic of that proposition (indeed, NGOs have urged that the same disclosure Eni seeks would be *beneficial* to the Nigerian public interest (*see supra* n.8)), Respondents cite no authority entitling them to evade discovery based on a vague burden purportedly imposed on a third party. In any event, as discussed below, any genuine concerns about the disclosure of sensitive material can be effectively addressed through a protective order.  Particularly given Eni's demonstrated need for the discovery sought and Respondents' failure to undermine any basis on which the Order was issued, the *Intel* factors weigh heavily in favor of discovery.

## IV.     ENI DOES NOT SEEK THE DISCOVERY OF PRIVILEGED MATERIALS.

As clearly stated in its Application, Eni does not seek privileged materials under the Subpoenas.  Nor does Eni "seek discovery into the 'FRN's litigation strategy,'" as Respondents incorrectly insist (Resp. Br. at 18 (quoting App. at 12)).   The Subpoenas instead request information about the *identity* of third party interests that may be influencing the FRN's litigation strategy, and whether they are exercising such influence for illegitimate reasons.   (*See* App. at 12-13; Ross Decl. Ex. 9 at 5-6).   Courts have upheld similar requests against privilege objections.  *See Gbarabe* v. *Chevron Corp.*, 2016 WL 4154849, at *2 (N.D. Cal. Aug. 5, 2016) (concluding that "the litigation funding agreement is relevant . . . and should be produced"); *Montgomery Cnty.* v. *MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) ("The attorney-client privilege does not shield fee arrangements.").

Respondents' attempt to quash the Subpoenas on privilege grounds is also premature.  Respondents bear the burden of showing that specific materials are privileged.  *See*, *e.g.*, *Robert Bosch LLC* v. *Pylon Manuf. Corp.*, 263 F.R.D. 142, 145 (D. Del. 2009).  But here, Respondents have failed to identify *any* purportedly privileged responsive documents, much less

produce a privilege log or confer with Eni regarding their claims, as is required for a motion to quash to be ripe. *See* D. Del. LR 7.1.1. Absent such a particularized showing, the Court should reject Respondents' request for a blanket order quashing the Subpoenas on privilege grounds. *See Re XPRT Ventures*, *LLC* v. *eBay*, *Inc*., 2011 WL 13142141, at *9 (D. Del. June 15, 2011) (rejecting privilege assertion where party had not yet "undertaken any search for the requested documents").

## V. RESPONDENTS' REQUEST FOR A PROTECTIVE ORDER SHOULD BE DENIED.

Respondents' request for a "protective order to narrow the scope" of the Subpoenas to cover only Respondents' OPL 245 funding agreements is also meritless. (Resp. Br. at 19.) This request is based solely on the assertion that "[g]iven Mr. Little's Declaration, which makes clear that Respondents have no Nigerian investors, those documents will confirm that there is no basis for Eni's allegations of collusion, and that Respondents' agreements with J&J are fair and above board." (*Id.*) However, Mr. Little's Declaration does not confirm that "Respondents have no Nigerian investors"—indeed, it appears calculated to avoid such confirmation—and Respondents offer no support for their suggestion that the funding arrangement is "fair and above board." (*See supra* at 11.) Respondents cannot narrow the scope of the Subpoenas based on their unsubstantiated claims about what the requested discovery will show. Any legitimate confidentiality concerns can be readily addressed through a stipulated protective order, as Eni previously proposed to Respondents. Their attempt to turn a basic discovery issue routinely addressed through negotiation into a basis to quash the Subpoenas should be rejected.

### CONCLUSION

For the foregoing reasons, Eni respectfully requests that the Court deny Respondents' motion and order Respondents to comply with the Subpoenas in full within two weeks of the entry of an order denying the motion.

Dated:  December 7, 2020

LANDIS RATH & COBB LLP

/s/ Rebecca L. Butcher
Daniel B. Rath (No. 3022)
Rebecca L. Butcher (No. 3816)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington DE 19801
(302) 467-4400
rath@lrclaw.com
butcher@lrclaw.com
cree@lrclaw.com

and

Nicolas Bourtin  (*pro hac vice*)
Beth Newton (*pro hac vice*)
Michele Materni (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000
bourtinn@sullcrom.com
newtonb@sullcrom.com
maternim@sullcrom.com

*Counsel for Applicant Eni S.p.A.*