# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In Re Ex Parte* Application of Eni S.p.A. For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No. 20-mc-00334-MN |

## SUPPLEMENTAL DECLARATION OF MASSIMILIANO DIODÀ IN SUPPORT OF ENI S.P.A.'S MEMORANDUM IN OPPOSITION TO RESPONDENTS' MOTION TO VACATE ORDER PERMITTING DISCOVERY, TO QUASH OR MODIFY SUBPOENAS, AND/OR FOR A PROTECTIVE ORDER

MASSIMILIANO DIODÀ declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.    I am a lawyer of the law firm Studio Legale Diodà ("Diodà") in Milan, Italy and am licensed to practice law in Italy. Diodà is counsel for Eni S.p.A. ("Eni") in the criminal trial (n. 54772/13 R.G.N.R.) brought by the Milan Public Prosecutor against Eni and other defendants in Milan, Italy in connection with OPL 245, in which the Federal Republic of Nigeria ("FRN") has filed civil claims against all defendants (together, the "Italian Actions").

2.    I submit this Supplemental Declaration in support of Eni's Memorandum in Opposition to Respondents' Motion to Vacate Order Permitting Discovery, to Quash or Modify Subpoenas, and/or for a Protective Order. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge and experience or on my review of records maintained by Diodà in the regular course of its representation of Eni.

### Scope of Assignment

3.    I have been asked to review Respondents' motion to vacate this Court's October 15, 2020 Order granting Eni's Application to Obtain Discovery For Use in Foreign Proceedings (the "Application"), including in particular the declaration of Manfredi Bontempelli

-1-

("Bontempelli Decl.") on behalf of Respondents, and to evaluate the claims made in those submissions with respect to certain issues of Italian law as they relate to the admissibility in the Italian Actions of the evidence requested by Eni in the Application, which this Court has granted.

4.      Having reviewed the Bontempelli Declaration, it is my professional opinion that Mr. Bontempelli's claims are incorrect in several material respects.  Below, I address those claims as they relate to the following issues: (i) the relevance of the evidence sought by Eni to the Italian Actions; (ii) the admissibility of that evidence in the Italian Actions, especially in connection with the current stage of the Milan proceedings; (iii) the Milan court's lack of jurisdiction to order Respondents to produce the discovery sought by Eni; (iv) the flawed attempt by Respondents and Mr. Bontempelli to contend that findings made in the "fast-track trial" also apply to the Italian Actions; and (v) the FRN's highly unusual issuance of conflicting powers of attorney ("POAs") to two different attorneys as its representatives in the Italian Actions.

*Relevance of the Evidence to the Italian Actions*

5.      Respondents and Mr. Bontempelli—none of whom has any disclosed active role in the Italian Actions—assert that the evidence that Eni seeks is "irrelevant for the purposes of deciding on the criminal and civil issues" involved in those proceedings.  (Bontempelli Decl. ¶ 26.)  Mr. Bontempelli even opines that "the defense of Eni in the Italian criminal trial could not obtain benefits" from this evidence.  (*Id.*)  As a member of Eni's legal team in the Italian Actions, I disagree.

6.      A central component of Eni's defense in the criminal trial is the argument that the 2011 purchase of OPL 245 was not the product of corruption but instead was a valid, lawful agreement that the FRN both negotiated and participated in as a party.  In 2011, the FRN shared Eni's position and participated in the transaction because it was lawful and in the Nigerian public interest.  Now, however, as a litigant seeking damages, the FRN is taking precisely the opposite position, contending that the transaction was unlawful and corrupt.  Thus, in assessing

n. D.

whether Eni's 2011 acquisition of OPL 245 was lawful, the Milan court must determine whether to credit the FRN's position at the time of the transaction or its position today.

7.    Evidence of the motive that is driving the FRN's about-face regarding OPL 245 could be relevant to that determination. Such evidence could undermine the credibility of the FRN's current litigation position, thus bolstering Eni's defense that the 2011 transaction was legitimate. That showing would at a minimum assist Eni in raising a reasonable doubt that the transaction involved corruption, which is all that Eni must do to prevail against the Milan Public Prosecutor's charges.

8.    Additionally, contrary to Mr. Bontempelli's assertions (Bontempelli Decl. ¶ ¶ 30-31), the evidence sought is independently relevant to the determination of the damages, if any, that Eni will be ordered to pay to the FRN if convicted. The tribunal that determines the quantum of damages (which could be either the Milan court or a civil judge) could, in its discretion, take the evidence that Eni is seeking into account.

### *Admissibility of the Evidence and Current Stage of the Italian Actions*

9.    Respondents and Mr. Bontempelli also claim that the evidence that Eni seeks through its Section 1782 Application cannot be used by Eni in the criminal trial "because the presentation of evidence has concluded, and the court is already hearing closing arguments." (Bontempelli Decl. ¶ 7.) Mr. Bontempelli further states that "the judge admits new evidence at the end of the trial instruction only '*if it is absolutely necessary*'" and that this is "a question of verifying whether the new evidence [would have] '*a decisive impact on the ground for the conviction and for the result of the judgment*.'" (Bontempelli Decl. ¶¶ 34-35 (citations omitted; emphasis in original).)

10.    These statements are inaccurate both as a matter of fact and as a matter of law. Although presentation of the evidence at the trial phase has concluded and the parties have begun presenting their closing arguments to the court, the Milan court may decide, in its discretion,

to admit new evidence pursuant to article 507 c.p.p., as Mr. Bontempelli himself acknowledges (Bontempelli Decl. ¶ 32). The court's discretion in that regard is not boundless, and it may admit new evidence only if it is "absolutely necessary" for the court to make a decision. In fact, where courts have found the new evidence to be "absolutely necessary" they have admitted that evidence pursuant to art. 507 c.p.p., including in cases in which my own law firm has been involved. Because, as I argue *supra* ¶¶ 5-8, the relevance arguments advanced by Mr. Bontempelli are flawed, the Milan court here may decide that the evidence sought by Eni is "absolutely necessary" to its decision.

11.     Contrary to the assertions of Respondents and Mr. Bontempelli (Bontempelli Decl. ¶ 37; Resp. Br. 4-5), the Milan court's rejection of *different* evidence pursuant to article 507 c.p.p. has no bearing on whether the court will also reject the evidence Eni now seeks. That decision did not, as Mr. Bontempelli asserts (Bontempelli Decl. ¶ 37), "confirm the completeness of the evidentiary framework." It signified nothing beyond the court's determination, following an *in camera* review, to reject the particular evidence proffered by the Milan Public Prosecutor, which has no connection to the evidence Eni now seeks.

12.     Finally, Respondents and Mr. Bontempelli are incorrect that the evidence that Eni is seeking "could not be introduced . . . even in the subsequent stages of the appeals." (Bontempelli Decl. ¶ 45.) As a threshold matter, an appeal is all but guaranteed in the Italian Actions, regardless of the outcome of the trial. This is because, under Italian law, defendants can appeal a judgment of conviction, and prosecutors can appeal a verdict of acquittal. Accordingly, Eni may seek to submit the requested evidence on appeal. And because this evidence, as I indicated above, ¶¶ 6-7, could cast a reasonable doubt on the prosecution's case, the Appellate Court may find that the evidence "had such value that, if taken, [it] would have determined a different conclusion of the trial." (Bontempelli Decl. ¶ 39.)

-4-

*The Milan court's Lack of Jurisdiction to Acquire the Evidence on Its Own*

13.     Mr. Bontempelli claims that the Milan court "could – if it wished – acquire evidence . . . without limitations as to the relative means for obtaining evidence, and also *by ordering house searches and seizures* . . . possibly through letters rogatory in the United States." (Bontempelli Decl. ¶ 33.) (Emphasis added.)  If Mr. Bontempelli is suggesting that the Milan court has power to directly compel Respondents to produce the evidence sought by Eni, I strongly disagree.  Mr. Bontempelli's opinion fails to account for the Milan court's jurisdictional limits. Respondents are not parties to the Italian Actions and do not reside in Italy.  As such, they fall outside the subpoena power of the Milan court, which does not have jurisdiction to order searches and seizures to be carried out in Delaware.

14.     Mr. Bontempelli's suggestion that the Milan court may obtain the evidence Eni seeks "possibly through letters rogatory in the United States" (Bontempelli Decl. ¶ 33) does not overcome this jurisdictional obstacle.  A letter rogatory is only a request for legal assistance. Although the Milan court could in theory make such a request for evidence to U.S. authorities, that would not guarantee a positive response by those authorities, nor would it confer power on the Milan court to order discovery from Respondents.

*Misleading Parallels Drawn by Respondents Between the Foreign Actions and the "Fast-Track" Trial*

15.     Both in their motion (Resp. Br. 3, 9-10) and in Mr. Bontempelli's declaration (Bontempelli Decl. ¶ 49), Respondents rely on certain findings made by the court in the criminal case against Zubelum Chukwuemeka "Emeka" Obi and Gianluca Di Nardo, who were originally indicted along with the remaining defendants in the Italian Actions but requested to be tried separately in what the Italian c.p.p. defines as a "special proceeding," or more precisely, "abbreviated trial" ("*rito abbreviato*") (*see* art. 438 *et seq.* c.p.p.).  While it is true that defendants Obi and Di Nardo have been convicted following the abbreviated trial (a conviction that both

h. D.

defendants have appealed), no meaningful parallels can be drawn between that trial and the Italian Actions. In fact, for the reasons expounded below, any such parallels are misleading.

16.     To begin with, and contrary to Respondents' assertions (Resp. Br. at 10), the court adjudicating the abbreviated trial is *not* the same court as the one adjudicating the Italian Actions. Pursuant to art. 438 c.p.p., the abbreviated trial is adjudicated in non-public hearings by the Judge for the Preliminary Hearing (in this case, Judge Giuseppina Barbara). The Italian Actions, by contrast, are being adjudicated by a full three-judge panel of the Milan court. None of the judges on that panel has had any involvement in either the preliminary hearing or the abbreviated trial of defendants Obi and Di Nardo.

17.     Additionally, and of particular relevance here, Mr. Bontempelli and Respondents ignore that the evidence presented at the abbreviated trial of Mr. Obi and Mr. DiNardo was one-sided. The abbreviated trial is decided based on the evidence that the Milan Public Prosecutor collects during the preliminary investigations and presents during the preliminary hearing to support its request to remand defendants to trial. Thus, unless defendants condition their request for an abbreviated trial on the acquisition of additional evidence (art. 438 § 5 c.p.p.), which defendants did not do here, no additional evidence is presented to the judge beyond the evidence introduced by the prosecution. In this case, it is Eni's position that the evidence collected by the prosecution during its preliminary investigation has been strongly undermined by the evidence presented by Eni and the other defendants in the trial phase of the Italian Actions.

18.     Moreover, under Italian criminal procedure rules, because neither Eni nor the other defendants could make any appearances, file any submissions, or present any defenses in the abbreviated trial, any findings made at that trial are inadmissible in the Italian Actions and do not bind either Eni or any of the other defendants. In fact, the Milan court is expressly forbidden from even considering those findings.

19.     In light of the above, Respondents' contention that "the same court has already found that Eni participated in the OPL fraud," Resp. Br. at 10, is false and misleading.

*The FRN's Representation in the Italian Actions by Two Competing Attorneys*

20.    Finally, Mr. Bontempelli opines that the fact that two attorneys appeared at the same hearing each purporting to represent the FRN, both ostensibly with powers of attorney issued by the same pro-tempore Nigerian ambassador to Italy (Mr. Yusuf Jongahinna), "is irrelevant for procedural purposes . . . because in the Italian system the civil party stays in the trial only with one attorney . . . and the power of attorney of different attorney's [*sic*] has no effects." (Bontempelli Decl. ¶ 50-51.)  Mr. Bontempelli's observation misses the point.

21.    Eni did not assert in its Application that the appearance of multiple competing attorneys on behalf of the FRN in the Italian Actions violated Italian procedural rules. Rather, Eni highlighted the unusual sequence of events that characterized the FRN's appearance in the Italian Actions to note that the "rapid succession of counsel [for the FRN], some of whom had conflicting mandates, is far outside the regular course of litigation and suggests that multiple sources are exerting control over the FRN in connection with the Italian Actions."  (App. at 10.) As a practicing criminal defense attorney, I cannot recall any other instance in my fifteen years of practice where two different attorneys each independently appeared on the same day claiming to represent the same client with two separate powers of attorney.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 6, 2020.

Massimiliano Diodà