# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re Ex Parte Application of Eni S.p.A. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | C.A. No. 20-mc-00334-MN<br><br>**PUBLIC VERSION**<br>**FILED:** December 18, 2020 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ORDER PERMITTING DISCOVERY, TO QUASH OR MODIFY SUBPOENAS, AND/OR FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

<p align="right">**P**AGE</p>

TABLE OF AUTHORITIES ................................................................................................... 2

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    ENI'S APPLICATION OMITTED HIGHLY MATERIAL FACTS ..................... 2

    II.    ENI DOES NOT SATISFY SECTION 1782'S
          STATUTORY REQUIREMENTS ......................................................................... 3

    III.    THE DISCRETIONARY *INTEL* FACTORS WEIGH
           AGAINST DISCOVERY ........................................................................................ 7

    IV.    THIS COURT SHOULD NOT ALLOW DISCOVERY OF
           PRIVILEGED INFORMATION ............................................................................ 9

    V.    THIS COURT SHOULD ENTER A PROTECTIVE ORDER
          LIMITING THE USE AND DISCLOSURE OF ANY DISCOVERY .................. 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*AxionHolding Cyprus Ltd., In re*, No. 20-00290 (D. Del. Sept. 18, 2020) .............................. 4, 5, 6

*Caratube International Oil Co., LLP, In re*,
730 F. Supp. 2d 101 (D.D.C. Aug. 11, 2010) ............................................................ 8

*Gbarabe v. Chevron Corp.*, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) ..................................... 9

*Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP, In re*
2019 WL 1559433 (D.D.C. Apr. 10, 2019) ............................................................ 4

*John Deere, Ltd. v. Sperry Corp.*, 754 F.2d 132 (3d Cir. 1985) ............................................ 7

*Montgomery County v. MicroVote Corp.*, 175 F.3d 296 (3d Cir. 1999) ....................................... 9

*O'Keeffe, In re, 646* F. App'x 263 (3d Cir. 2016) ............................................................ 7

*Storag Etzel GmbH, In re*, 2020 WL 1849714 (D. Del. Apr. 13, 2020) ....................................... 5

*United Access Techs., LLC v. AT&T Corp.*,
2020 WL 3128269 (D. Del. June 12, 2020) ............................................................ 6

*WinNet R CJSC, In re*, 2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017) .......................................... 2

**STATUTES**

28 U.S.C. § 1782 ............................................................ passim

**RULES**

Fed. R. Civ. P. 7(b)(1) ............................................................ 10

**INTRODUCTION**

Eni S.p.A. ("Eni") made the criminal trial in Italy – in which it is alleged to have perpetrated a massive fraud against the Nigerian people – the centerpiece of its Section 1782 application, D.I. 2 (the "Application"). It now concedes in its answering brief, D.I. 16, that the evidentiary phase of that trial is over and it is *in closing arguments*. And, even if Eni had a realistic prospect of admitting new evidence at this late stage – which it does not – Eni still has offered no coherent explanation why discovery about how the Federal Republic of Nigeria's ("FRN") asset recovery agent is funding its efforts to obtain redress for Eni's fraud is remotely relevant to the question of Eni's culpability.

Eni also has made no plausible showing that the intrusive discovery it seeks is relevant to its arbitration claims. The Court now has before it (under seal) the ICSID arbitration demand that Eni says justifies Section 1782 discovery, and it can see it includes ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████ To the contrary, Eni expressly alleges that ███████████████████████████████████████████████████████████

The Court should be clear-eyed about Eni's ulterior motives. Eni wants to use the United States federal courts to harass a U.S.-based litigation funder for assisting the people of Nigeria in recovering the fruits of a massive fraud, and to use documents filed with this Court to cast baseless aspersions on Respondents and the FRN in the hope of shifting public attention away from its own egregious conduct, which has already been reflected in factual findings and two criminal convictions in Italy. Eni has even gone so far as to create a website on which it peddles false and misleading statements about Respondents based on cherry-picked documents (including the illegally-obtained, non-operative funding agreement it filed with this Court). *See* Eni.com, *Drumcliffe's involvement in the OPL 245 case*, https://www.eni.com/en-

IT/media/opl245-case-process-nigeria/case-shell-eni-delaware.html (last visited Dec. 17, 2020). This Court should not allow itself to be used as a pawn in Eni's "attack-the-victim" public-relations campaign. The discovery here, as detailed in Respondent's Motion to Vacate, D.I. 12, is statutorily improper, irrelevant, and harassing. It should not be permitted.

## ARGUMENT

**I.     ENI'S APPLICATION OMITTED HIGHLY MATERIAL FACTS**

**A.**     Eni represented to the Court that it intends to use the discovery it seeks here, in the Italian criminal trial, but failed to disclose that the evidence phase is closed and the Italian court is hearing closing arguments. Eni's sole response in its Opposition to the Motion (at 7, D.I. 16) is that it was sufficient to bury in its 214 pages of exhibits, a passing reference to a "final submission" by the FRN, and that, in any event, it was not required to disclose the "precise stage" of the Italian trial. That is preposterous – and, if accepted, would reduce Section 1782 applicants' duty of candor to a nullity. *See In re WinNet R CJSC*, 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (vacating Section 1782 order when petitioner made only "cursory references" to facts that undermined its application and did not "frankly or fully" explain them).

**B.**     Eni's Application also omitted much of the procedural history of the Italian proceedings, including that the two defendants in the Italian Fast Track trial were convicted on the basis of the court's factual findings that Eni was a knowing and willing participant in the OPL 245 fraud. *See* D.I. 12 at 3-4. Contrary to Eni's suggestion (at 5), the point here is not merely whether those findings are technically binding in Eni's trial. The point is that those findings are highly material to Eni's Application because they put the lie to Eni's self-serving factual recitation in support of its Application, including its suggestion the FRN is pursuing "unfounded" claims against Eni. *See* App. at 4-10.

**C.**     Finally, Eni failed to disclose material facts that undermine its claim that it seeks

this discovery for use in the ICSID arbitration.  Eni argued to this Court in its Application that "[d]iscovery into the unusual arrangement funding the FRN's litigation efforts—and the individuals benefitting from that arrangement—will likely support Eni's claims."  App. at 12.  Yet Eni left out its arbitration request.  It is clear why:  the arbitration request undermines its argument.  ███████████████████████████████████████████████████

███████████████████████████████████████████████. *See* Ex. 11, ICSID, Req. for Arbitration (Sept. 14, 2020).  What the arbitration request *does* allege is that ██

████████████████████████████████████████████████████████████

████████████████████████████████████ as Eni would have this Court believe.  *See id.* ¶¶ 8, 66-67.  Eni's failure to disclose these material facts is sufficient to vacate the Section 1782 Order, D.I. 8 (Oct. 15, 2020).

## II.   ENI DOES NOT SATISFY SECTION 1782'S STATUTORY REQUIREMENTS

**A.**   Eni's response confirms it cannot satisfy the statutory requirement that the evidence it seeks be "for use" in the Italian criminal trial.  As Eni concedes, the evidentiary stage of the trial is over, and closing arguments are underway.  Eni attempts to muddy the waters by suggesting there are disputed questions of Italian law that this Court should not resolve.  But there is no material dispute:  Eni's own declarant, Mr. Massimiliano Diodà, concedes that the Italian court may only admit new evidence during closing arguments if it is "absolutely necessary" to complete the factual record.  *See* Suppl. Decl. of M. Diodà ¶ 10, D.I. 17-1 (Dec. 6, 2020) ("Suppl. Diodà Decl.").  And Eni does not dispute that the court has already held that the factual record is complete, and therefore denied a motion to admit other new evidence – a ruling that "forecloses any realistic possibility that the court would admit new evidence Eni seeks to obtain, regardless of the source of that evidence."  *See* Ex. 12, Suppl. Decl. of M. Bontempelli ¶ 2 (Dec. 17, 2020).  Theoretical possibilities aside, neither Eni nor Mr. Diodà demonstrates any

3

realistic possibility that new evidence would be admitted at this late stage – much less evidence of irrelevant events that post-date the fraud at issue in the trial by seven years.[1]

As explained in the opening brief, the mere possibility that Eni might be able to use this discovery in any eventual appeal is no basis for permitting discovery at this juncture. There is no appeal now, and may never be one. And even if Eni or the Italian prosecutor were to take an appeal, there is no basis to conclude now – before the grounds for any appeal are known – that the discovery requested here would be relevant to that proceeding. As discussed above, Respondents' involvement as funders long post-dates the OPL 245 fraud. Thus, even if the Court were persuaded that there is a meaningful possibility that Eni might need discovery from Respondents for the purpose of an appeal, it should vacate its Order and quash the subpoenas without prejudice to Eni submitting a renewed application at the appropriate time.

**B.** Eni notes (at 8-9) that other district courts have allowed discovery for use in investor-state arbitrations, and that (as Respondents acknowledged in their opening brief) one of them, *In re Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*, 2019 WL 1559433 (D.D.C. Apr. 10, 2019), allowed discovery for use in an ICSID arbitration, specifically. But Eni does not dispute that, as Your Honor recently wrote, "[r]ecent cases in this district . . . have been consistent on the issue. . . . [P]rivate commercial arbitrations are not 'tribunals' for purposes of applications pursuant to [Section] 1782." Mem. Order at 2, *In re Axion Holding Cyprus Ltd.*, No. 20-00290 (D. Del. Sept. 18, 2020) ("*Axion*"), D.I. 14. Eni's attempt to distinguish ICSID arbitrations is unpersuasive. As Your Honor held in *Axion*, a "tribunal" must "act with authority of the state;" the fact that judicial review exists is insufficient. *Id.* (addressing

---

[1] Mr. Diodà avers that it is theoretically possible the court "may decide" this evidence is absolutely necessary, but, neither he nor Eni offers any basis to conclude that there is a realistic chance the court would decide that here. *See* Suppl. Diodà Decl. ¶ 10.

4

LCIA arbitration); *accord In re Storag Etzel GmbH*, 2020 WL 1849714, at *3 (D. Del. Apr. 13, 2020) ("tribunal" "extend[s] only to courts and government agencies, not to private arbitral bodies"). ICSID arbitrators do not wield state authority; to the contrary, ICSID's core purpose is to offer a *neutral* forum for resolving private, commercial disputes between foreign investors and member states. ICSID arbitrations thus do not qualify as "tribunals" under this Court's well-settled standards.

  **C.**  Eni also fails to explain why the discovery it seeks has any relevance to either the Italian trial or the ICSID arbitration. *See* Mot. at 11-13 (explaining that Section 1782 requires that evidence be "useful" for the relevant foreign proceeding, and citing cases). Respondents have submitted sworn declarations stating that they are not entitled to any share of the FRN's recovery (and certainly not 35 percent of it), but only to a share of J&J's contingency fee from the FRN, and, further, that none of their investors is a current or former FRN official. *See* Mot. Ex. 7 (D.I. 13-2 at 19-22), Decl. of J. Little ¶¶ 6-9 ("Little Decl."); Mot. Ex. 8 (D.I. 13-2 at 23-25), Decl. of B. Johnson ¶¶ 4-8. Those declarations conclusively debunk Eni's baseless speculation that Respondents are not legitimate U.S. litigation funders but are, instead, vehicles for corrupt Nigerian interests. *Id.*

  Eni's suggestion (at 10-11) that Respondents' declarations leave matters in doubt is baseless and desperate. In keeping with its reliance on internet rumors, Eni nit-picks at the language of the declarations. *Id.* But it does not contest Mr. Little's statement that Respondents are entitled only to a share of J&J's recovery, not the *FRN*'s, *see* Mot. Ex. 7 (¶ 9), which was the central premise of Eni's theory why this discovery could be relevant in either tribunal.

  Eni asserts (at 12) that the Court would have to decide "whether to credit the FRN's original position that the transaction was lawful or its newly adopted position that the transaction

5

was corrupt." But it remains a mystery why discovery into Respondents is pertinent to that question. Respondents had nothing to do with the taking of either position: the "original position" to which Eni refers is the position of the corrupt officials with whom Eni conspired to defraud Nigeria, not the position of the FRN. And the "newly adopted" position dates back at least to the EFCC's 2016 recommendation that the FRN sue Eni for its role in the fraud, Mot. Ex. 6 (17), D.I. 13-2, which pre-dates Respondents' involvement in the case *by almost 18 months*.

Eni also asserts (at 12) that "[i]f any current or former FRN officials or their associates stand to benefit personally from any such damages through Respondents, that fact may impact the court's assessment" of damages, but it offers no evidence or authority to support that proposition.[2] And, again, there is simply no basis for the suggestion that any current or former FRN officials stand to benefit from this litigation. Let us be clear: ***they do not***. If the Court would like to confirm this for itself, Respondents continue to be willing to provide documents for *in camera* review.[3] But Eni's attempted fishing expedition should not be tolerated.

Finally, with regard to the arbitration, Eni states (at 11) that "[c]onfirmation that the FRN's claims against Eni are driven by private financial incentives could bear on Eni's argument that it has been subjected to unreasonable and inequitable treatment by the FRN." But as explained above, the fact that Respondents have a small contingent interest in J&J's recovery does not support the suggestion that FRN's litigation is driven by anything but its desire to hold

---

[2] Eni purports to rely on the Diodà declaration, but Mr. Diodà says nothing of the sort. He states that if the court were to admit new evidence (which, as explained above, is extremely unlikely), it would have discretion to consider it in the damages phase. *See* Suppl. Diodà Decl. ¶ 8. He does not say that the court could admit new evidence *for the purpose of calculating damages*, or that it might discount its calculation of damages based on that evidence. *See id.*

[3] *See United Access Techs., LLC v. AT&T Corp.*, 2020 WL 3128269, at *1 (D. Del. June 12, 2020) (noting that "close consideration of the subject matter in the disputed documents (e.g., through *in camera* review) is a prudent approach" when assessing the discoverability of litigation funding materials).

6

those responsible for the OPL 245 fraud accountable for their actions. And, in any event, Eni does not actually make any allegation in the arbitration about ███████████. *See supra* 3.

### III. THE DISCRETIONARY *INTEL* FACTORS WEIGH AGAINST DISCOVERY

A. The second *Intel* factor weighs against discovery because the Italian court would not be receptive to the evidence Eni seeks from Respondents. *See* Mot. at 14-15. Eni's only response is that Italian courts are generally receptive to Section 1782 discovery, which Respondents do not dispute. But Eni overlooks that *Intel* invites the Court to consider more specifically "*the character of the proceedings underway abroad*, and the receptivity of the foreign government *or the court*" to judicial assistance. *In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016) (emphases added). Here, there is no reason to believe that the Milan court would be receptive to *any* new evidence, regardless of how it was obtained, because the factual record is closed, and the court has already determined that it is complete. *See supra* 3-4; Mot. at 4-5.[4]

With regard to the arbitration, Eni is correct that courts have the discretion to permit Section 1782 discovery before foreign proceedings have been initiated, and therefore before the tribunal has made any evidentiary rulings. But here, the court has the benefit of Eni's Arbitration Request, which ████████████████████████████████████████████████████. Eni has offered no reason to believe that an arbitration panel would be receptive to hearing evidence that is plainly irrelevant to the issues actually before it. Moreover, as *In re Caratube International Oil Co., LLP* explained, arbitrations are not like other foreign tribunals, because the

---

[4] Neither of the cases on which Eni relies held that court should look only to a jurisdiction's general receptiveness to Section 1782 evidence even when, as here, the court in which Eni seeks to use the evidence would not admit it. *In re O'Keeffe* and *John Deere, Ltd. v. Sperry Corp.* each noted that judging the receptiveness of a tribunal to Section 1782 discovery does not require a court to assess whether the tribunal would admit a particular piece of evidence. *See* 646 F. App'x at 267; 754 F.2d 132, 138 (3d Cir. 1985). But neither court considered a situation in which, as here, discovery has closed, and there is no reason to think that the tribunal would be receptive to any evidence, however obtained.

parties expressly bargained for the arbitral panel to make discovery rulings, not the courts. *See* 730 F. Supp. 2d 101, 106 (D.D.C. 2010).[5] Eni would not be prejudiced if this Court declines to allow this discovery unless and until the panel is convened and decides to allow it.

  **B.** The third *Intel* factor also weighs against allowing discovery because Eni seeks to circumvent foreign discovery restrictions. Whether or not the Italian court has addressed a request for this particular discovery, the fact remains that discovery closed long ago, and the court has found that the record is complete and closed to new evidence. Moreover, Eni has no persuasive answer to the cases holding that attempts like this one to use the liberal discovery standards of the federal courts to obtain discovery for use in an arbitration are *precisely* attempts to evade the more limited discovery options in an arbitration. *See* Mot. at 15-16 (citing cases). This Court should not allow Eni to "forum shop" for favorable discovery standards.

  **C.** As set forth in the Respondents' declarations, the discovery Eni seeks would be unduly burdensome for Respondents to produce because it is commercially sensitive, would invade their investors' well-founded expectations of privacy, and would have a chilling effect on their ability to raise the funds needed to enable Nigeria and other victims of fraud and corruption to seek redress. It is simply not true, that there is "nothing in the record" supporting a finding that the discovery is intrusive and burdensome. *See* Opp. at 18.[6] Eni's suggestion that the Court

---

[5] Contrary to Eni's suggestion, the *In re Caratube* court's reluctance to upset the parties' bargained-for expectations was not premised on the timing of the application or the state of proceedings in the arbitration, which the court addressed separately. *See* 730 F. Supp. 2d at 106-07. Moreover, the fact that other arbitral panels have been open to considering Section 1782 evidence obtained prior to the convening of the panel has no bearing on whether *this Court* should permit Eni to obtain sensitive and confidential discovery from Respondents now, when there is no showing of relevance, and when no prejudice would work to Eni by waiting until the panel has had a chance to consider its relevance.

[6] Eni's suggestion that Mr. Little does not provide enough detail about why the potential disclosure of its investor agreements and identities would be valuable to their competitors is hard

8

should ignore the deleterious effect this discovery could have for the people of Nigeria, because they are not before the Court, overlooks that Respondents specialize in funding litigation to vindicate the rights of victims of fraud and corruption, and are funding the asset-recovery agent the FRN retained to pursue claims of a massive fraud. Their interests, therefore, align with those of the Nigerian people, which is precisely why Eni is attempting to use Respondents as a proxy for its retaliation against the FRN for holding Eni to account.

## IV. THIS COURT SHOULD NOT ALLOW DISCOVERY OF PRIVILEGED INFORMATION

Respondents raised the issue of privilege out of concern that Eni's subpoenas specifically documents that courts routinely find to be protected as attorney work product and by the attorney-client privilege. *See* Mot. at 18-19 (citing cases); *see also* Ex. 13, Mem. Order, *Elm 3ds Innovations LLC v. Samsung Elecs. Co., Ltd.*, No. 14-1430 (D. Del. Nov. 19, 2020), D.I. 372 (finding after *in camera* review that litigation funding agreements were irrelevant, and that communications with funders were work product).[7] Eni responds that it "does not seek privileged materials," and the Court should hold it to that representation.

## V. THIS COURT SHOULD ENTER A PROTECTIVE ORDER LIMITING THE USE AND DISCLOSURE OF ANY DISCOVERY

If the Court does not quash the subpoenas, it should grant Respondents' request that any discovery be subject to strict confidentiality and use restrictions, and that disclosure be limited to

---

to credit. Respondents are investment funds. Their competitors could use that information to undercut them, poach their investors, and interfere with their fundraising.

[7] Eni cites (at 19) *Gbarabe v. Chevron Corp.* and *Montgomery County v. MicroVote Corp.*, as decisions that "upheld similar requests against privilege objections." Not so. In *Gbarabe*, the court expressly noted that "plaintiff does not assert that the agreement is privileged," and that plaintiff had also conceded its relevance. 2016 WL 4154849, at *2 (N.D. Cal. Aug. 5, 2016). And *Montgomery County* did not concern a litigation funding agreement at all, but a fee agreement between a law firm and its client. 175 F.3d 296, 304 (3d Cir. 1999).

9

individuals who agree to be bound by the Court's order and submit to its jurisdiction. The Court should also prohibit discovery of Respondents' investor lists, in light of Mr. Little's sworn declaration that all of Respondents' investors are U.S. residents, and none is a current or former FRN official. Little Decl. ¶ 5. Eni says (at 20) that Mr. Little's statement does not confirm that Respondents "have no Nigerian investors," but he *did* aver to the best of his knowledge that all of Respondents' "investors are domiciled in the United States." *Id.* ¶ 5. Eni's fantastical belief that there must be Nigerian investors unknown to Respondents themselves has no basis and cannot justify burdensome and harmful discovery into Respondents' highly sensitive business relationships. *See id.* ¶ 11; Fed. R. Civ. P. 45(d)(3).

## VI. THE COURT SHOULD NOT ORDER RESPONDENTS TO COMPLY WITH THE SUBPOENAS, OR IMPOSE A DEADLINE FOR ANY PRODUCTION

Eni requests that the Court order Respondents to comply with the subpoenas "in full" within two weeks of the entry of any order to that effect. *See* Opp. at 3, 20. As a threshold matter, the Court should deny that request because it not properly before it. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); D. Del. Local R. 7.1.2(a) ("Unless otherwise ordered, all requests for relief shall be presented to the Court by motion."). It also is unwarranted, given the uncertain scope of any production this Court may require, and the likelihood (which Eni acknowledges) that the parties would have to meet and confer about the entry of a protective order and issues relating to privilege.

## CONCLUSION

This Court should vacate its prior Order, D.I. 8, quash or modify Eni's subpoenas, or, in the alternative, condition any discovery as set forth above.

Dated:  December 17, 2020                    Respectfully submitted,

                                                                 */s/ David E. Ross*
                                                                David E. Ross (#5228)
                                                                Ross Aronstam & Moritz LLP
                                                                100 South West Street, Suite 400
                                                                Wilmington, DE 19801
                                                                Tel.: (302) 576-1600
                                                                Email: dross@ramllp.com

                                                                *Counsel for Respondents*