IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re Ex Parte* Application of Eni S.p.A. for | ) | |
| an Order Pursuant to 28 U.S.C. § 1782 | ) | No. 20-mc-334-MN |
| Granting Leave to Obtain Discovery for Use | ) | |
| in Foreign Proceedings. | ) | |

## <u>MEMORANDUM OPINION</u>

Daniel Bartley Rath, Rebecca Lyn Butcher, Jennifer L. Cree, LANDIS RATH & COBB LLP, Wilmington, DE; Nicolas Bourtin, Beth D. Newton, Michele C. Materni, SULLIVAN & CROMWELL LLP, New York, NY – Attorneys for Applicant.

David E. Ross, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE – Attorney for Respondents.

March 19, 2021
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

Eni S.p.A. ("Eni") filed an *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings.  (D.I. 1).  The Court granted the application, (D.I. 8), and Eni served subpoenas on Respondents Poplar Falls, LLC, Drumcliffe Partners I LLC, Drumcliffe Partners II LLC, Drumcliffe Partners III LLC, Drumcliffe Partners III SMA I, LLC, Drumcliffe Partners IV LLC, and Drumcliffe Partners IV SMA1, LLC (collectively, "Respondents").  Pending before the Court is Respondents' Motion to Vacate Order Permitting Discovery, to Quash or Modify Subpoenas, and/or For Protective Order.  (D.I. 11).  The motion is fully briefed.[1]  (D.I. 12; D.I. 16; D.I. 18; D.I. 27).  For the reasons discussed below, the motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.   BACKGROUND[2]

Eni is an Italian multinational oil and gas company.  (D.I. 2 at 4).  In April 2011, the Federal Republic of Nigeria ("FRN") sold an oil prospecting license known as OPL 245 to Eni and Royal Dutch Shell PLC for $1.3 billion, putting an end to many competing claims on the rights.  (*Id.* at 5).  The transaction was approved by then-ranking members of the FRN cabinet.  (*Id.*).

### A.   The Italian Proceedings

On February 7, 2017, the Milan Public Prosecutor filed criminal charges against Eni, alleging that OPL 245 was part of a corrupt scheme involving Eni and Nigerian officials.  (*Id.* at 6-7, 11; D.I. 3, Ex. E ¶ 3).  FRN subsequently sought, and was granted, leave to intervene as a civil

---

[1]    Eni also moved to expedite the Court's consideration of the pending motion.  (D.I. 31).  Respondents had "no objection in principle to the expeditious resolution of their pending motion to vacate."  (D.I. 33).  The motion, however, became moot when the Italian court acted to acquit Eni on March 17, 2021.  (D.I. 35).

[2]    The Court assumes the parties' familiarity with the complex factual record underlying the foreign proceedings and provides a highly abbreviated overview of the facts relevant to the pending discovery dispute.

claimant in the criminal case against Eni.  (D.I. 2 at 11 n.12).  FRN appointed Johnson and Johnson Solicitors ("J&J") as its recovery agent in that action.  (D.I. 12 at 6).  Through that agreement, J&J is entitled to a percentage of FRN's recovery.  (*Id.*).  Respondents, affiliates of a U.S. commercial litigation funder, entered an agreement with J&J to finance the representation of FRN in exchange for a percentage of the eventual recovery ("the Funding Agreements").[3]  (D.I. 12 at 6-7).

The civil and criminal actions were tried jointly in the Milan Court.  (D.I. 2 at 11).  On January 20, 2021, the Milan Court heard closing arguments from defendants, including Eni.  (D.I. 30 at 1).  On March 17, 2021, the Milan Court acquitted Eni and all other defendants of all charges.  (D.I. 35).  As of the date of this Memorandum Opinion, the Milan Court's verdict remains appealable.  (D.I. 35).

### B.    The ICSID Arbitration

On September 14, 2020, Eni, through its subsidiaries, filed a request for arbitration against FRN under the bilateral investment treaty between the Netherlands and Nigeria and in accordance with the International Centre for Settlement of Investment Disputes ("ICSID") Convention.  (D.I. 2 at 1, 12).  The ICSID arbitration concerns Eni's investment in OPL 245 and FRN's alleged obligation to convert OPL 245 into an oil mining license.  (*Id.*).  An arbitration panel has not yet convened.  (*Id.* at 17).

### C.    Procedural History

On October 6, 2020, Eni filed its *ex parte* application seeking to serve discovery requests on Respondents.  (D.I. 1).  Eni represented that FRN's apparent "about-face" on OPL 245 "ha[s] given Eni reason to believe that the FRN's actions are driven by third parties," namely,

---

[3]    The parties dispute whether Respondents stand to receive a portion of the total recovery, or a portion of only J&J's share.  (D.I. 3, Ex. D ¶¶ 16-17; D.I. 12 at 7).  Eni maintains that the discovery it seeks is necessary to resolve this uncertainty.  (D.I. 3, Ex. D ¶¶ 18-20).

Respondents, "seeking to earn illicit profits."  (D.I. 2 at 11).  Eni stated that it required documents from Respondents "in order to assert certain defenses and claims in the Foreign Actions" and "to show that the current administration is challenging the FRN [deal with Eni] because third party interests are influencing the FRN's litigation strategy."  (*Id.* at 11-12).  Eni's § 1782 application sought documents and deposition testimony regarding: (1) the identities of Respondents' beneficial owners and/or ultimate stakeholders; (2) Respondents' relationship to current or former FRN officials; and (3) any contractual and/or financial arrangements that Respondents have entered into with respect to proceedings relating to OPL 245.  (*Id.* at 12-13).

On October 15, 2020, the Court granted the application, and five days later, Eni served subpoenas on Respondents.  (*See* D.I. 13-2, Ex. 9).  On November 16, 2020, Respondents sent responses and objections to Eni's subpoenas.  (*See* D.I. 17-2, Ex. B).  Two days later, Respondents filed the pending motion.  (D.I. 11).

## II.    LEGAL STANDARDS

Under 28 U.S.C. § 1782(a), district courts are authorized to order discovery for use in foreign proceedings.  The purpose of the statute is to "facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect."  *In re Bayer* AG, 146 F.3d 188, 191-92 (3d Cir. 1998).  The court may grant an application under § 1782 only if three statutory conditions are met: (1) the application is made by an "interested person;" (2) the person from whom discovery is sought "resides or is found" within the district; and (3) the discovery is "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a); *see also Bayer*, 146 F.3d at 193.  If the applicant meets these statutory requirements, the court may nonetheless deny the requested discovery order based on discretionary considerations, including: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign

3

tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign [tribunal] to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

## III.   DISCUSSION

Respondents assert that Eni's *ex parte* application concealed material facts that would have prevented the Court's discovery order from issuing.[4]  In light of those facts, Respondents contend, Eni's request for a discovery order falls short of the statutory requirements of § 1782 and should be denied as an exercise of the Court's discretion based on the *Intel* factors.  The Court considers these arguments in turn.

### A.   Statutory Requirements of § 1782

#### 1.   For Use in a Foreign Proceeding

Respondents do not dispute either that Eni is an interested person in the foreign proceedings or that Respondents are found in the District of Delaware.  Respondents, however, challenge whether the requested discovery will be "for use" in the Italian court proceedings, and whether the ICSID arbitration qualifies as a "proceeding before a foreign or international tribunal."

---

[4]   As an initial matter, Respondents contend that Eni's lack of candor in its application is sufficient ground for the Court to vacate the discovery order and quash Eni's subpoenas. Specifically, Respondents criticize Eni for failing to disclose "that the Italian Criminal Proceeding is in *closing arguments*; that the court has already denied a motion to admit additional evidence; that the alleged importance of this discovery to Eni's defenses is not a permissible ground for admitting it at this stage; and that it is therefore extremely unlikely that it will be able to use any discovery it obtains from Respondents in the Italian Proceeding."  (D.I. 12 at 9 (emphasis in original)).  The Court agrees that these omitted facts are material to Eni's § 1782 application, and Eni perhaps has only itself to blame that these procedural considerations have delayed resolution of its request.  As discussed *infra*, however, the Court disagrees that Eni's omissions merit denying its discovery request entirely.

First, Respondents argue that any requested discovery will not be "for use" in the Milan Court because, at this late stage, "the court almost certainly will not allow Eni to introduce new evidence."[5] (D.I. 12 at 11).  Respondents also assert, "Eni offers no reason to believe the particular discovery it now seeks would serve any useful purpose in the criminal trial [or appeal], because it has no bearing at all on Eni's guilt or innocence."  (*Id.* at 12).  Respondents therefore speculate as to the admissibility and usefulness of the evidence Eni seeks.  Section 1782, however, does not require the district court to conduct such a speculative inquiry.  The Third Circuit has stated that "it would contradict the express purpose of section 1782 if the American court were required to predict the actions of another country's tribunal."  *Bayer*, 146 F.3d at 192 (clarifying that admissibility and discoverability of evidence in the foreign tribunal were not controlling concerns under § 1782) (internal quotation marks omitted).  The Second Circuit similarly interpreted the "for use" statutory requirement as a low threshold, stating, "[b]y adopting the phrase 'for use,' Congress plainly meant to require that § 1782 applicants show that the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (internal quotation marks and citation omitted); *see, e.g.*, *In re WinNet R CJSC*, 16mc484(DLC), 2017 WL 1373918, at *8 (S.D.N.Y. Apr. 13, 2017) (finding that applicant seeking discovery about company's alleged reorganization scheme did not meet "for use" requirement because all foreign proceedings, except for civil cases seeking to simply enforce contractual payments, had closed). Thus, Respondents' arguments about the ultimate admissibility and relevance of Respondents'

---

[5]     While Respondents' motion was pending, the Milan Court acquitted Eni of all charges. (D.I. 35).  Eni maintains, however, that the evidence it seeks will still be useful in any appeal of the Italian proceedings.  (D.I. 16 at 7, 12).

documents do not show that the requested discovery would not be "for use" in the Italian proceedings under § 1782.

Second, Respondents argue that the ICSID arbitration does not constitute a "proceeding in a foreign or international tribunal," under § 1782. (D.I. 12 at 13). Respondents assert that several decisions, including three issued from this District, have held that a private arbitration is not a foreign proceeding as contemplated by § 1782. (*Id.* (citing *In re Axion Holding Cyprus Ltd.*, Misc. No. 20-00290 (MN), 2020 WL 5593934, at *2 (D. Del. Sept. 18, 2020); *In re EWE Gasspeicher GmbH*, Civ. No. 19-mc-109-RGA, 2020 WL 1272612, at *2 (D. Del. Mar. 17, 2020), *appeal pending* 20-1830 (3d Cir. Apr. 24, 2020); *In re Storag Etzel GmbH*, Civ. No. 19-mc-209-CFC, 2020 WL 1849714, at *3 (D. Del. Apr. 13, 2020)). Indeed, courts are split on the question of whether the term "tribunal" in § 1782 covers private arbitral bodies. *Storag Etzel*, 2020 WL 1849714, at *1. District courts, however, "have regularly found that arbitrations conducted pursuant to Bilateral Investment Treaties, and specifically by the ICSID, qualify as international tribunals under [§ 1782]" and are not private arbitrations. *Islamic Republic of Pak. v. Arnold & Porter Kaye Scholer LLP*, Misc. Action No. 18-103 (RMC), 2019 WL 1559433, at *7 (D.D.C. Apr. 10, 2019). *See also In re Republic of Turk.*, Civil Action No. 19-20107 (ES) (SCM), 2020 WL 4035499, at *3 (D.N.J. July 17, 2020); *In re Chevron Corp.*, 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010) ("[T]he arbitration here at issue is not pending in an arbitral tribunal established by private parties. It is pending in a tribunal established by an international treaty, the BIT between the United States and Ecuador, and pursuant to UNCITRAL [(United Nations Commission on International Trade Law)] rules."); *In re Veiga*, 746 F. Supp. 2d 8, 22 (D.D.C. 2010); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, No. 3:09 MC 265 (JBA), 2009 WL 2877156, at *4 (D. Conn. Aug. 27, 2009) ("A reasoned distinction can be made between arbitrations such as those

conducted by UNCITRAL, a body operating under the United Nations and established by its member states, and purely private arbitrations established by private contract." (internal quotation marks and citation omitted)); *In re Oxus Gold PLC*, MISC No. 06-82-GEB, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007) (adopting magistrate judge's holding that arbitration panel constituted foreign tribunal because "[t]he Arbitration at issue in this case, between two admittedly private litigants, is . . . being conducted within a framework defined by two nations and is governed by [UNCITRAL rules].").  Respondents have not identified contrary authority that puts Eni's ICSID arbitration outside the scope of § 1782.

Thus, Respondents fail to show that the Court's discovery order is inconsistent with statutory requirements under § 1782.

## B.    Discretionary *Intel* Factors

Respondents argue that discretionary considerations weigh against Eni's discovery request and counsel the Court to vacate its order or quash Eni's subpoenas.  First, Respondents assert that the foreign tribunals would not be receptive to the discovery.  Second, Respondents aver that Eni's discovery motion conceals an attempt to circumvent the discovery procedures of the foreign tribunals.  Third, Respondents contend that the subpoenas that Eni served are unduly burdensome.  As discussed below, the Court agrees that the *Intel* factors counsel modifying Eni's subpoenas and issuing a protective order.

### 1.    Receptivity of Foreign Tribunals

Respondents argue that the Milan Court and the ICSID arbitration panel would not be receptive to the discovery sought by Eni.  As the party opposing discovery, Respondents bear the burden of persuading the Court that the foreign tribunals would not consider the discovery sought under § 1782.  *In re Gilead Pharmasset LLC*, C.A. No. 14-mc-243 (GMS), 2015 WL 1903957, at *3 (D. Del. Apr. 14, 2015).  The inquiry under this *Intel* factor is not "whether *particular* evidence

would be admissible in a foreign court," but whether the foreign tribunal is generally receptive to "U.S. federal-court judicial assistance." *In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016) (emphasis in original) (quoting *Intel*, 542 U.S. at 264).

Respondents assert that the Milan Court would not be receptive to the discovery sought by Eni at this late stage. (D.I. 12 at 14). Eni maintains that it may submit evidence to the Milan Court on appeal. (D.I. 16 at 7, 12). The parties have provided competing statements by Italian legal experts on the likelihood that discovery from Respondents could be admitted in the Italian proceedings. (*See* D.I. 13-1, Ex. 5; D.I. 17-1). These opposing contentions invite the Court to decide whether the discovery sought by Eni would be admissible or helpful in the foreign proceedings. As discussed above, however, § 1782 does not authorize a district court to substitute its own assessment of admissibility or discoverability for that of a foreign tribunal. *See Bayer*, 146 F.3d at 192. Furthermore, resolution of those issues has no bearing on whether the Italian tribunal is generally receptive to evidence obtained through the U.S. federal courts. *See Gilead Pharmasset*, 2015 WL 1903957, at *3 ("The court notes the parties engage in what has been labeled a battle-by-affidavit of international legal experts. [Section 1782] does not condone speculative forays into legal territories unfamiliar to federal judges. . . . Rather, the court need only assess whether [Respondent] has satisfied its burden to show the foreign courts will not be receptive to this court's judicial assistance." (internal citations and quotation marks omitted)).

Thus, this factor does not weigh against Eni's § 1782 application.

### 2.    Circumvention of Discovery Procedures

Next, Respondents argue that Eni's discovery request circumvents the procedures of both the Milan Court and ICSID arbitrations. A discovery request pursuant to § 1782 is viewed as an attempt to circumvent foreign proof-gathering restrictions when the foreign tribunal has already rejected requests for the same documents. *In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011)

(denying that application was an attempt to circumvent discovery restrictions because parties disputed the status of applicant's discovery requests in the foreign tribunal). Respondents contend that, although the Milan Court has neither received nor denied requests for the discovery sought by Eni, the court "almost certainly would deny such a request." (D.I. 12 at 15). Again, the Court declines to substitute its assessment of the requested evidence for that of the foreign tribunal. Without more, the Court cannot conclude that Eni's § 1782 application attempts to circumvent discovery rules and procedures in the Italian proceedings.

Respondents also assert that the Court's discovery order would allow Eni to circumvent the ability of parties to an ICSID arbitration to set the procedural rules governing their arbitration. (*Id.*). ICSID rules provide: "Except as the parties otherwise agree, the Tribunal may, if it deems it necessary at any stage of the proceedings, (a) call upon the parties to produce documents or other evidence, and (b) visit the scene connected with the dispute, and conduct such inquiries there as it may deem appropriate." ICSID Rules, Art. 43. Respondents have not shown that the requested discovery circumvents ICSID arbitral procedures, as Eni and FRN appear not to have established the rules for the upcoming arbitration involving OPL 245.[6] It would, however, seem to contravene the spirit of ICSID arbitrations for the Court to order discovery on behalf of Eni before the parties have negotiated the rules of their arbitration. *See In re Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 106 (D.C.C. 2010) ("This Court is reluctant . . . to interfere with the parties' bargained-for expectations concerning the arbitration process."). Thus, considering the Italian proceedings and

---

[6] Respondents also argue that the discovery rules of ICSID arbitration would make the ICSID tribunal unreceptive to the requested discovery. (D.I. 12 at 14-15). Other than the fact that the parties have not yet established the arbitral rules, Respondents provide no basis for the Court to conclude that an ICSID arbitral panel would be generally unreceptive to discovery obtained by the U.S. federal courts.

the ICSID arbitration, the Court concludes that this factor weighs slightly against Eni's discovery request.

### 3. Burden of Discovery Requests

Finally, Respondents argue that Eni's discovery requests are unduly burdensome, going "well beyond the narrow, targeted discovery allowed by this Court." (D.I. 12 at 16-18). The Court's discovery order allowed Eni to seek from Respondents documents and testimony regarding (1) the identities of Respondents' beneficial owners and/or ultimate stakeholders; (2) Respondents' relationship to current or former FRN officials; and (3) any contractual and/or financial arrangements that Respondents have entered into with respect to proceedings relating to OPL 245. (D.I. 8). The subpoenas which Eni served on Respondents sought:

(1) All documents concerning (i) the identity of each and every Person with any direct or indirect ownership interest in [Respondent], including any beneficial ownership interest, and including but not limited to any Members of [Respondent]; and (ii) the amount, proportion, and nature of each such Person's ownership interest in [Respondent].

(2) All Documents and Communications concerning all direct or indirect relationships, interactions, contracts, agreements, commitments, financial arrangements, or other transactions between (i) [Respondent], or any Person acting for it or on its behalf; and (ii) the FRN, any FRN Official, or any Person acting for or on behalf of the FRN or any FRN Official.

(3) All Documents and Communications concerning all direct or indirect relationships, interactions, contracts, agreements, commitments, financial arrangements, or other transactions between (i) any Person identified in response to Request No. 1, or any Person acting for such Person or on its behalf; and (ii) the FRN, any FRN Official, or any Person acting for or on behalf of the FRN or any FRN Official.

(4) All Documents and Communications concerning any contracts, agreements, commitments, and/or financial arrangements between (i) [Respondent], or any Person acting for it or on its behalf; and (ii) any other Person with respect to any proceedings or other matters relating to OPL 245, including but not limited to the Foreign Actions.

(D.I. 13-2, Ex. 9 at 5-6).  Although the Court does not doubt that Eni attempted in good faith to conform its subpoenas to the Court's discovery order, the Court agrees with Respondents that portions of Eni's requests exceed the scope of the order.  First, the Court did not authorize Eni to seek "all documents" on any topic or information about the "amount, proportion, and nature" of the ownership interest of Respondents' owners and stakeholders.  Second, the Court authorized Eni to seek information about Respondents' relationships to current or former FRN officials, not to the entire Federal Republic of Nigeria or any person acting on its behalf.[7]  The Court exercises its authority under the Federal Rules of Civil Procedure[8] to modify the subpoenas accordingly.[9]

Respondents also seek a protective order limiting the use of discovery.  (D.I. 12 at 19-20).  Respondents argue that public disclosure of the requested information would harm their business prospects and damage the interests of people who stand to benefit from the litigation that Respondents finance.  (D.I. 12 at 17).  Although § 1782 does not require a district court to predict

---

[7]    Respondents' third objection is to item four of Eni's subpoenas, seeking "all documents and communications exchanged between Respondents and 'any other Person' regarding OPL 245."  (D.I. 12 at 16-17).  The Court disagrees that the substance of this request is beyond the scope of Eni's authority to seek information about "any contractual and/or financial arrangements that Respondents have entered into with respect to proceedings relating to . . . OPL 245."  (D.I. 8).

[8]    Section 1782 provides: "To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782(a).  Under Rule 45, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information . . . ."  FED. R. CIV. P. 45(d)(3)(B).

[9]    Respondents also ask the Court to quash the subpoenas to the extent they seek privileged information.  (D.I. 12 at 18-19).  Section 1782 expressly states, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  28 U.S.C. § 1782(a).  Eni's subpoenas also expressly exempt privileged materials.  (*See* D.I. 13-2, Ex. 9 at 3, 5).  The subpoenas therefore need not be modified or quashed to exclude privileged information.  For avoidance of doubt, the Court clarifies that Respondents will not be required to produce privileged information in compliance with Eni's discovery requests.

the ultimate bearing of disputed evidence on the foreign proceedings, the court "may well be able to understand such law sufficiently to distinguish a request for useful discovery from a request that is designed merely to burden an opponent." *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1115 (E.D. Wis. 2004). Here, the Court cannot rule out that evidence of FRN's ulterior motive in challenging OPL 245 may be discoverable, relevant, and admissible, even at the advanced stage of the Italian proceedings and the early stage of the ICSID arbitration. The crux of those disputes, however, is whether the OPL 245 agreement was valid or corrupt. Any role played by the litigation financers in those disputes is undeniably minor.

Thus, the Court grants Respondents' requested protective order. Allowing discovery pursuant to a protective order will provide Eni with potentially relevant evidence – should the foreign tribunals consider it – while also protecting Respondents from the credible harm that public disclosure of their information presents.

## IV.    **CONCLUSION**

For the foregoing reasons, Respondents' motion to vacate the Court's discovery Order, to quash or modify Eni's subpoenas, and/or for protective order is GRANTED-IN-PART and DENIED-IN-PART.

An appropriate order follows.